[Civ. No. 26702. Fourth Dist., Div. One. May 18, 1983.]

PARADISE VALLEY HOSPITAL, Cross-complainant and Appellant, v.
ROBERT C. SCHLOSSMAN, Cross-defendant and Respondent;
LOUIS LURIE, Cross-complainant and Respondent.

COUNSEL

Rhoades & Hollywood, Rhoades, Hollywood & Neil and Bruce E. Sulzner for Cross-complainant and Appellant.

Higgs, Fletcher & Mack and Rita L. Hanscom for Cross-complainant and Respondent.

No appearance for Cross-defendant and Respondent.

OPINION

**STANIFORTH, Acting P. J.**—Paradise Valley Hospital's (Hospital) appeal presents this novel question: Where one of several joint tortfeasors is insolvent, should the solvent tortfeasors share liability for the shortfall in direct proportion to their respective degrees of fault?

The issue tendered is yet another of the "problems of contribution and indemnity among joint tortfeasors [which] lurk in the background" of *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, 823 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], and *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899]. The broad and developing principles enunciated by these landmark decisions compel this conclusion: The

solvent defendants should bear the burden of a shortfall caused by the insolvency of a defendant in direct proportion to their respective degrees of culpability.

## FACTS

Conna and Victor Miner sued Paradise Valley Hospital, Doctors Louis Lurie and Robert C. Schlossman for negligence. The jury found the Miners innocent of fault, awarded them $1.5 million and apportioned responsibility among the defendants as follows: Hospital 10 percent ($150,000); Lurie 40 percent ($600,000); and Schlossman 50 percent ($750,000). Hospital paid $500,000 and Lurie paid $1 million to satisfy the judgment. Schlossman filed a petition for bankruptcy. Hospital by cross-complaint sought contribution from Lurie and Schlossman for the amount paid ($350,000) in excess of the amount representing its proportionate liability. ($500,000 minus $150,000 equals $350,000.) Lurie also cross-complained against Schlossman for indemnity on Schlossman's proportionate share of the judgment. ($1 million minus $600,000 equals $400,000 paid on Schlossman's account.) The court granted judgment in favor of Hospital against Schlossman for $350,000 and in favor of Lurie against Schlossman for $400,000 but denied Hospital's cross-claim for contribution from Lurie. Hospital appeals asserting it is entitled to contribution from Lurie in an amount equal to the difference between what the Hospital paid and the amount due by Hospital as derived from the ratio of responsibility between the Hospital and Lurie.[1]

Lurie argues against dividing the Schlossman shortfall in proportion to fault. He says "the burden should be equal" asserting it is the "only equitable solution to an over-all inequitable situation." Lurie points out *American Motorcycle* did not involve an after-judgment equitable indemnity problem; therefore argues Lurie "we are left with the guidelines established in the contribution statute, CCP § 875" which "limits a tortfeasor's amount of contribution to his own pro rata share of the entire judgment."

## DISCUSSION

### I

We extract these controlling principles fom *Li* v. *Yellow Cab Co.* and *American Motorcycle* v. *Superior Court*:[2]

1. The *Li* principles replaced the harsh contributory negligence doctrine with the rule of "pure comparative negligence" in the context of a single plaintiff

---

[1] The ratio of liability between Hospital and Lurie assessed by the jury was 10 percent, versus 40 percent, or one to four or 20 percent to 80 percent. Hospital has paid $500,000, or $200,000 over 20 percent, and Lurie has paid $1 million, or $200,000 under 80 percent. If the shortfall is shared in proportion to respective fault, Lurie should pay Hospital $200,000.

[2] See *Munoz* v. *Davis* (1983) 141 Cal.App.3d 420, 423-425 [190 Cal.Rptr. 400], for a "Brief History of the Doctrine of Equitable Indemnification."

and a single defendant. *Li* explicitly recognized numerous collateral issues were raised (and unanswered) particularly in the application of comparative negligence in a case involving multiple parties. (*Li,* 13 Cal.3d at pp. 823-826.)

2. Under long-established common law principles, a *negligent tortfeasor is generally liable for all damage of which his negligence is a proximate cause;* stated another way, in order to recover damages sustained as a result of an indivisible injury, a plaintiff is not required to prove a tortfeasor's conduct was the sole proximate cause of the injury, but only that such negligence was a proximate cause. (See generally 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 624, pp. 2906-2907, and cases cited; Rest.2d Torts, §§ 432, subd. (2), 439; Civ. Code, § 1714.)

3. In cases involving multiple tortfeasors, each tortfeasor is personally liable for any indivisible injury of which his negligence is a proximate cause. This principle has commonly been expressed as "joint and several liability." (*American Motorcycle,* 20 Cal.3d, p. 590.) The advent of comparative negligence did not compel the demise of the joint and several liability rule. *American Motorcycle* holds that after *Li,* a concurrent tortfeasor whose negligence is a proximate cause of an indivisible injury remains liable for the total amount of damages, diminished only " 'in proportion to the amount of negligence attributable to the person recovering.' " (*Id.,* at p. 590.)

4. If the joint and several liability doctrine were abandoned in multiple party actions, *American Motorcycle* predicts there would be "a serious and unwarranted deleterious effect on the practical ability of negligently injured persons to receive adequate compensation for their injuries. One of the principal byproducts of the joint and several liability rule is that it frequently permits an injured person to *obtain full recovery for his injuries even when one or more of the responsible parties do not have the financial resources to cover their liability. In such a case the rule recognizes that fairness dictates that the 'wronged party should not be deprived of his right to redress,'* but that '[t]he wrongdoers should be left to work out between themselves any apportionment.' (*Summers v. Tice* (1948) 33 Cal.2d 80, 88 . . . .) *The Li decision does not detract in the slightest from this pragmatic policy determination."* (*Id.,* at p. 590; italics added.)

5. In determining to what degree the injury was due to the fault of the plaintiff, it is essential the plaintiff's negligence be weighed against the combined total of all other causative negligence. A plaintiff's actual damages do not vary by virtue of the particular defendants who happen to be before the court. "[W]e do not think that the damages which a plaintiff may recover against defendants who are joint and severally liable should fluctuate in such a manner." (*American Motorcycle,* 20 Cal.3d, p. 589, fn. 2.)

Thus· "*the contributory negligence of the plaintiff must be proportioned to the combined negligence of plaintiff and of all the tort-feasors, whether or not joined as parties . . . whose negligence proximately caused or contributed to plaintiff's injury.*" (Use Note, BAJI No. 14.90 (5th ed. 1975 pocket pt.) p. 152; approved in *American Motorcycle*, p. 589, fn. 2; italics added.)

6. After a most detailed analysis, *American Motorcycle* found the California contribution statutes (Code Civ. Proc., §§ 875-880) were not in conflict with nor did they prohibit a common law remedy. The high court concluded: "[T]he current equitable indemnity rule should be modified to permit a concurrent tort-feasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis." (*American Motorcycle*, 20 Cal.3d at p. 598.)

## II

Lurie proposes the $750,000 Schlossman shortfall should be shared equally but tenders no case authority.[3] One proffered scholarly thesis, however, is "*all solvent parties* [including plaintiff] whose culpable conduct is causally implicated in an injury should bear the burden of an insolvent defendant according to their relative proportionate fault." (Zavos, *Comparative Fault and the Insolvent Defendant: A Critique and Amplification of American Motorcycle Assn.* v. *Superior Court* (1980-1981) 14 Loyola L.A.L.Rev. 775, 817; see also Fleming, *Foreword: Comparative Negligence At Last—By Judicial Choice* (1976) 64 Cal.L.Rev. 239, 251-252.) These authors would require a contributory negligent plaintiff to share in proportion to relative fault along with the solvent defendants in any shortfall caused by the judgment proof defendant.[4] (See also *American Motorcycle*, Clark, J., dis., 20 Cal.3d at p. 608.) However, these writers uniformly agree where there is *a fault-free plaintiff*, any shortfall should be shared by the solvent defendants in proportion to their relative proportionate degree of culpability. Justice Clark also concedes the fault-free plaintiff "is entitled to a joint and several judgment against each defendant in accordance with common law rule." (*American Motorcycle*, dis., p. 614, fn. 4.)

Harry N. Zavos states: "When a [plaintiff] has suffered innocent damages, he may look to the other parties for reimbursement. As he receives that reim-

[3]*Tucker* v. *Nicholson* (1938) 12 Cal.2d 427, 433-434 [84 P.2d 1045], in context of a deficiency judgment holds: "If contribution cannot be obtained from any joint debtor by reason of his insolvency, the loss arising therefrom is to be borne proportionately by the solvent co-obligors."

[4]Such a position rests upon semantic ratiocinations, upon sophistic ancient irrational dichotomy, more form than substance. Its failure rests in part on the inability to recognize the *Li* rule arose in a single plaintiff/single defendant setting. The position ignores basic rules of logic by giving gross overbreadth to the *Li* premise. The scholars would transport emanations, derivations, sound and unsound from a one-to-one party setting into a multiple party case. They take out of context the observation " 'the extent of fault should govern the extent of liability' " (*American Motorcycle,* Clark, J., dis. 20 Cal.3d, p. 608) and apply it in face of the broad based long-standing public policies enunciated in the *American Motorcycle* majority. Such reasoning substitutes sterile logic for hard rock reality.

bursement, the liabilities and rights of the parties must be continually adjusted. The adjustment should be made in accordance with the proportionate fault of the various parties." (*Comparative Fault and the Insolvent Defendant: A Critique and Amplification of American Motorcycle Assn.* v. *Superior Court, supra,* at p. 821.)

Fleming observes further concerning the "pro rata" rule (commonly thought to be the 1955 Uniform Contribution Act—before *American Motorcycle*—rule) prescribing equal division: "*That rule, is of course, based on a theory of causation, in contrast to the comparative negligence, which is based on fault. This incompatibility results in an indefensible allocation of shares,* especially where more than one participant in the accident suffers damages and cross-claims are made." (*Foreword: Comparative Negligence at Last—By Judicial Choice, supra,* pp. 252-253; italics added.) Fleming concludes: "The most obvious and best method would, of course, be to legislate 'comparative contribution,' contribution in proportion to the parties' negligence." (*Id.,* at p. 253, fn. omitted.)

C. L. Summers observes: "Under joint and several liability with contribution, the solvent defendant(s) would pay the proportion of damages attributable to the insolvent tortfeasor *because each defendant is liable for the whole injury.*" (*Comparative Negligence in Ohio,* 50 U.Cin.L.Rev. 342, 346; italics added.)

The Restatement of Restitution is in accord with these scholars: "*Proportionate share where one is unable to contribute.* If one or more of a number of co-obligors or co-sureties should become insolvent or leave the jurisdiction, *one of the others who makes a payment is entitled by a proceeding in equity to have contribution from the others as if the insolvent or absent persons had originally not participated.* The same rule applies where one or more of the others is relieved from liability to contribute, as where the Statute of Limitations runs in favor of one but not the others owing to a difference in domicile. . . ." (§ 85, com. h, p. 384; second italics added.)

Finally Schwartz reasons: An equal division of liability of an insolvent tortfeasor is not compatible with the comparative negligence goal of apportioning damages according to its degree of fault. (Schwartz, Comparative Negligence (1974) § 16.7, p. 261.)

III

The *Li-American Motorcycle* decisions point inevitably to the same rational equitable allocation of shortfall by an insolvent defendant as arrived at by the scholars. This result is born of reason and notions of fairness.

*American Motorcycle* makes it eminently clear: "One of the principal by-products of the joint and several liability rule is that it frequently permits an injured party to obtain full recovery for his injuries even when one or more of the responsible parties do not have the financial resources to cover their liability." (*Id.*, 20 Cal.3d at p. 590.) In *American Motorcycle* joint and several liability principles are conjoined with the concept of liability governed by proportionate fault to which is added the right of equitable contribution. These premises, so constellated, give form and outline for the next logical extension and application of these rules. An insolvent defendant's shortfall should be shared proportionately by the solvent defendants as though the insolvent or absent person had originally not participated.

We have only to consider Lurie's alternate proposal to behold the wisdom of sharing the shortfall in proportion to fault. An "indefensible allocation of shares" is the ever present possible result of the "equal division" rule. Finally, in the context of a legal system which assesses liability based on degree of fault, to introduce the equal division concept where a shortfall is present, is to create a philosophically and legally unacceptable burr.

Code of Civil Procedure sections 875-880 do not require a different result. *American Motorcycle*, after masterful analysis, held these code sections did not preclude the recovery of partial indemnity from a concurrent tortfeasor on a comparative fault basis. (*Id.*, at pp. 599-604.) A fortiori these statutes do not interdict the extension of this sound rule to cover a shortfall caused by an insolvent defendant.[5] The deficiencies arising by reason of Schlossman's insolvency should be borne proportionately to the degree of fault of the solvent codefendants.

## IV

Lurie points to the fact Schlossman has not yet been adjudicated bankrupt and warns a judgment of this nature may not be discharged through bankruptcy, therefore he argues our decision and any court order is premature. The uncertainty of Schlossman's financial health presents another novel problem. Hospital complains this issue was not raised in the trial court and therefore cannot be raised for the first time on appeal. (*Sommer* v. *Martin* (1921) 55 Cal.App. 603, 610 [204 P. 33].) We overlook the legal nonpresence of this issue and respond for the question needs resolution to guide the trial court upon remand.

---

[5]Even some of those jurisdictions following a pro rata division for contribution find when joint tortfeasors are disproportionately at fault pro rata liability for a shortfall is inequitable. (*Chrysler Corp.* v. *Todorovich* (Wyo. 1978) 580 P.2d 1123; *Great West Cas. Co.* v. *Fletcher* (1982) 56 N.C.App. 247 [287 S.E.2d 429]; *Arctic Structures, Inc.* v. *Wedmore* (Alaska 1979) 605 P.2d 426.)

Hospital sought both a judgment of indemnity and also a declaration of rights. Hospital was not only entitled to a judgment declaring its right/duty relationship to the codefendants but also to a money judgment against Lurie for $200,000—the difference between what Hospital paid and 20 percent of the total judgment in keeping with the one-to-four ratio of comparative liability. Such judgment is enforceable by execution and should be accompanied by an order continuing jurisdiction in the superior court and providing any recovery by either Hospital or Lurie from Schlossman be distributed to Hospital and Lurie according to this ratio. The order of continuing jurisdiction should, for example in the event any party actually collects funds, require a partial satisfaction of judgment stating how the sums are paid into court and how they should be disbursed in compliance with the ratio of comparative liability. The order would require copies of the partial satisfaction of judgment be served on all parties and executed by them unless a party makes a timely objection by notice of motion for hearing. The trial court should fashion enforceable orders which will implement the basic objective of making available to the solvent parties any assets of Schlossman lawfully subject to seizure.[6]

Judgment reversed and cause remanded for proceeding conformable to this opinion.

Wiener, J., and Butler, J., concurred.

The petition of cross-complainant and respondent for a hearing by the Supreme Court was denied July 13, 1983.

---

[6]For an excellent discussion of details of such a court order see *Comparative Fault and the Insolvent Defendant: A Critique and Amplification of American Motorcycle Assn. v. Superior Court, supra,* 14 Loyola L.Rev. 775, 827-831.