[No. S022331. May 4, 1992.]

MARK DaFONTE, a Minor, etc., Plaintiff and Appellant, v.
UP-RIGHT, INC., Defendant and Appellant.

594

## COUNSEL

Miles, Sears & Eanni and William J. Seiler for Plaintiff and Appellant.

Ian Herzog, Douglas Devries, Leonard Sacks, Bruce Broillet, David Harney, Laurence Drivon, Roland Wrinkle, Harvey R. Levine, Leonard Esquina, Philip Bruce, Silver, McWilliams, Stolpman, Mandel, Katzman, Krissman & Elber, Thomas G. Stolpman, Donna Silver, Rose, Klein & Marias, Robert B. Steinberg, David A. Rosen and Arlyn M. Egers as Amici Curiae on behalf of Plaintiff and Appellant.

Baker, Manock & Jensen, Mark W. Snauffer, Cathrine E. Basham, G. Martin Tuttle, Wunsch & George and Armen L. George for Defendant and Appellant.

Harvey M. Grossman, Ronald A. Zumbrun, Anthony T. Caso, Deborah J. Martin, Fred J. Hiestand, Fred L. Main, Haight, Brown & Bonesteel, Roy G. Weatherup, Delos E. Brown and Caroline E. Chan as Amici Curiae on behalf of Defendant and Appellant.

## OPINION

**BAXTER, J.**—California's system of "comparative fault" seeks to distribute tort damages proportionately among all who caused the harm. However, even after judicial adoption of the comparative fault system, every culpable tort defendant, regardless of his or her degree of fault, remained "jointly and severally" liable to pay any damages attributable to the fault of others who failed to contribute their proportionate share. This rule of joint and several liability applied not only to the injured person's "economic" damages, such as medical costs and lost earnings, but to "non-economic" damages like emotional distress, pain, and suffering.

In 1986, the voters adopted Proposition 51, an initiative measure designed to modify the doctrine of joint and several liability in tort cases. Among other things, Proposition 51 added section 1431.2 to the Civil Code.[1] Section 1431.2 provides that in an action for wrongful death, personal injury, or property damage, each defendant's liability for the plaintiff's "non-economic" damages shall be several only, not joint, and that each defendant shall be liable only for the percentage of "non-economic" damages which corresponds to that defendant's proportionate share of fault.

Here we conclude that the plain language of section 1431.2 eliminates a third party defendant's joint and several liability to an injured employee for unpaid noneconomic damages attributable to the fault of the employer, who is statutorily immune from suit. The Court of Appeal erred by holding otherwise. We therefore reverse the judgment of the Court of Appeal and remand with instructions.

## FACTS

The pertinent facts can be briefly stated. Fifteen-year-old Mark DaFonte (Mark), an employee of Van Erickson Ranches (Van Erickson), was seriously injured on August 30, 1987, his second day of work, when his arm was drawn into the moving conveyor belt of a mechanical grape harvester he was attempting to clean by hand. Van Erickson's compensation carrier, American Insurance Company (American), paid Mark workers' compensation benefits in the amount of $23,676. Mark, his parents, and his sister sued the harvester's manufacturer, Up-Right, Inc. (Up-Right), on theories of negligence and product defect. This suit was consolidated with American's subrogation action against Up-Right to recover the workers' compensation benefits paid to Mark.[2]

There was evidence that the harvester lacked both a belt guard and an accessible emergency "off" switch. A sign on the harvester warned against touching the moving machinery, but evidence indicated that Up-Right gave Van Erickson no instruction on safe methods of cleaning the belt, and that Mark had worked an overlong shift without adequate supervision.

In a special verdict, the jury allocated fault as follows: 15 percent to Mark, 45 percent to Van Erickson, and 40 percent to Up-Right. The jury found Mark's economic damages to be $355,000 and his noneconomic damages to

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

[2] Shortly before trial, Up-Right filed a cross-complaint against Mark's parents, Van Erickson, and Mark's immediate supervisor. The cross-complaint was severed from the suits described above.

be $300,000. The parties agreed that the total damage award of $655,000 should be reduced by 15 percent, or $98,250, the amount attributable to Mark's comparative fault. Pursuant to section 1431.2, the trial court further reduced the judgment against Up-Right by $135,000, the 45 percent of noneconomic damages attributable to the fault of Van Erickson. The trial court denied American's claim for reimbursement of workers' compensation benefits, but also declined to reduce Mark's judgment against Up-Right by any portion of the benefits he had received. The court therefore entered judgment against Up-Right in the amount of $421,750 plus costs. Mark and Up-Right both noticed appeals.[3]

The Court of Appeal dismissed Up-Right's evidentiary and instructional claims. It agreed, however, that Up-Right was entitled to a full credit for workers' compensation benefits received by Mark from an employer whose proportionate share of fault exceeded the benefits paid.

The appellate court also accepted Mark's argument that the trial court had erroneously invoked section 1431.2 to preclude a full joint and several award of noneconomic damages against Up-Right. Applying the formula developed by this court in *Associated Construction & Engineering Co. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829 [150 Cal.Rptr. 888, 587 P.2d 684] (*Associated Construction*) and *Aceves v. Regal Pale Brewing Co.* (1979) 24 Cal.3d 502 [156 Cal.Rptr. 41, 595 P.2d 619] (*Aceves*), the Court of Appeal thus recomputed the judgment against Up-Right as follows: $655,000, less $98,250 (representing Mark's 15 percent of fault), less $23,676 (representing Van Erickson's 45 percent of fault up to the total amount of compensation benefits paid).

Accordingly, the Court of Appeal entered a modified judgment in the amount of $533,074 plus costs. We granted Up-Right's petition for review, limited to the issue of joint and several liability under section 1431.2.

## DISCUSSION

Before 1975, California's common law employed the traditional all-or-nothing system of tort responsibility. If the plaintiff's fault had contributed in any measure to his own injury, his recovery was barred, regardless of the fault of others. On the other hand, every defendant found somewhat responsible for an indivisible injury, no matter how slight his or her fault, was liable for all the damages incurred by the victim. An injured person could unilaterally choose which of several concurrent tortfeasors to sue, based on

---

[3]The jury also awarded $25,000 in damages to Mark's father. This judgment was not appealed.

their ability to pay. Generally, one singled out for suit could not join other responsible parties, and the target defendant's right to contribution or indemnity from other concurrent tortfeasors was sharply restricted. (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1196-1197 [246 Cal.Rptr. 629, 753 P.2d 585] (*Evangelatos*); *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 591-598 [146 Cal.Rptr. 182, 578 P.2d 899] (*American Motorcycle*).)

In *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] (*Li*), this court eliminated the all-or-nothing doctrine of contributory negligence. Thereafter, a plaintiff's recovery against others responsible for the injury could only be reduced in proportion to his or her own share of fault.

In *American Motorcycle*, we concluded that *Li*'s comparative fault principles did not abrogate each defendant's joint and several liability for damages attributable to the fault of others. Our opinion adhered to the pre-*Li* principle that culpable defendants, rather than the injured plaintiff, should bear the risk of inadequate contribution by others responsible for the harm. (20 Cal.3d at pp. 588-590.)

However, *American Motorcycle* took some steps to ameliorate the harshness of the joint-and-several-liability rule. Our opinion concluded that one sued for personal injury could join other concurrent tortfeasors in the original action in order to allocate proportionate responsibility, or could seek equitable indemnity from such tortfeasors in proportion to their fault. (20 Cal.3d at pp. 591-598, 604-607.) More recent cases make clear that any share of damages attributable to an insolvent tortfeasor should be apportioned equitably among the solvent tortfeasors. (*Evangelatos*, *supra*, 44 Cal.3d at p. 1198; see, e.g., *Ambriz* v. *Kress* (1983) 148 Cal.App.3d 963 [196 Cal.Rptr. 417]; *Paradise Valley Hospital* v. *Schlossman* (1983) 143 Cal.App.3d 87 [191 Cal.Rptr. 531].)

Of course, an employer cannot be sued in tort for the work-related injury of an employee. The employer's sole liability is for benefits payable, regardless of fault, under the workers' compensation law. (Lab. Code, §§ 3602, 3864.) On the other hand, the employee may sue any other responsible person for "all damages proximately resulting" from the injury. (*Id.*, § 3852.) In appropriate cases, the employer may also recoup workers' compensation benefits by means of reimbursement from the third party tortfeasor, a lien against the employee's third party tort recovery, or a credit against the tort judgment for benefits otherwise due to the employee in the future. (*Id.*, § 3850 et seq.)

In earlier times, an employer's concurrent fault, however slight, barred a claim for reimbursement, lien, or credit. (*Roe* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 884, 889 [117 Cal.Rptr. 683, 528 P.2d 771]; *Witt* v. *Jackson* (1961) 57 Cal.2d 57, 73 [17 Cal.Rptr. 369, 366 P.2d 641].) However, in *Associated Construction* and *Aceves*, we explained how the relationship between injured employees, negligent employers, and culpable third parties must be interpreted to accommodate the principles of *Li* and *American Motorcycle*.

We held, in essence, that an employee's damage judgment against third parties must be reduced by an amount attributable to the employer's proportionate share of fault, up to the amount of workers' compensation benefits paid. If the employer's share of fault exceeded the benefits paid or owed, its claim for reimbursement, lien, or credit should be denied. If the benefits paid or owed exceeded the employer's share of fault, the employer should recoup the excess only. (*Aceves, supra,* 24 Cal.3d at pp. 512-513; *Associated Construction, supra,* 22 Cal.3d at p. 842.) Under this formula, third party defendants remained jointly and severally liable to the injured employee for all damages attributable to the employer's fault which were not covered by workers' compensation benefits. (*Associated Construction, supra,* 22 Cal.3d at p. 842, fn. 9; *Arbaugh* v. *Procter & Gamble Mfg. Co.* (1978) 80 Cal.App.3d 500, 507-508 [145 Cal.Rptr. 608].)

In sum, by 1986 the courts had eliminated certain inequities of the former tort recovery system, but so-called "deep pocket" defendants whose fault was slight could still be saddled with large damage awards mainly attributable to the greater fault of others who were able to escape their full proportionate contribution. (See *Evangelatos, supra,* 44 Cal.3d at p. 1198.) Proposition 51 sought to modify this system of recovery.

Proposition 51 first codified its purpose by adding section 1431.1 to the Civil Code. This statute decries the unfairness and cost of the "deep pocket" rule to both "governmental and private defendants" (*id.,* subds. (a)-(c)) and cites the exploitation of relatively blameless defendants who "are perceived to have substantial financial resources or insurance coverage . . . ." (*Id.,* subd. (b).) Section 1431.1 declares that in order to remedy these inequities and avoid "catastrophic" financial consequences to public and private individuals and entities, "defendants in tort actions shall be held financially liable in closer proportion to their degree of fault." (*Id.,* subd. (c).)

To carry this intent into effect, Proposition 51 amended section 1431 and added section 1431.2. Amended section 1431 establishes a presumption that "[a]n obligation imposed upon several persons . . . is presumed to be joint,

and not several, *except as provided in Section 1431.2 . . . ."* (Italics added.) New section 1431.2 declares that in actions for wrongful death, personal injury, or property damage based on comparative fault, "the liability of each defendant for non-economic damages shall be several only and shall not be joint." The statute further specifies that "[e]ach defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount." (*Id.,* subd. (a).)

The important distinction between "economic" and "non-economic" damages is carefully defined by the statute. "Economic" damages encompass all "objectively verifiable monetary losses including medical expenses, loss of earnings, burial costs, loss of use of property, costs of repair or replacement, costs of obtaining substitute domestic services, loss of employment and loss of business or employment opportunities." (§ 1431.2, subd. (b)(1).) "Noneconomic" damages are such "subjective, non-monetary losses [as] pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation." (*Id.,* subd. (b)(2).)

■ Proposition 51 thus retains the joint liability of all tortfeasors, regardless of their respective shares of fault, with respect to all objectively provable expenses and monetary losses. On the other hand, the more intangible and subjective categories of damage were limited by Proposition 51 to a rule of strict proportionate liability. With respect to these noneconomic damages, the plaintiff alone now assumes the risk that a proportionate contribution cannot be obtained from each person responsible for the injury. (See *Evangelatos, supra,* 44 Cal.3d at p. 1198.)

■ Nonetheless Mark and his amici curiae[4] urge that section 1431.2 eliminates joint liability for noneconomic damages only among those "defendants" whose liability was mutually joint and several in all respects before the statute was enacted. As they note, when a worker suffers a compensable injury in employment, the employer cannot be a tort or indemnity "defendant" and has neither joint nor several liability for the employee's injuries beyond its obligation for workers' compensation benefits. Since the tort damage relationship between employers and third parties has never been

---

[4]A joint amicus curiae brief has been filed in Mark's behalf by the California Trial Lawyers Association and the California Applicants' Attorneys' Association. Amicus curiae briefs on behalf of Up-Right have been filed by the Pacific Legal Foundation, by the Product Liability Advisory Council, by Kiewit Pacific Company, and jointly by the Association for California Tort Reform and the California Chamber of Commerce.

fully joint and several, Mark and his amici curiae conclude, that relationship is neither addressed nor modified by section 1431.2. The Court of Appeal accepted this view. In so doing, it erred.

■ To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning. (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208 [271 Cal.Rptr. 191, 793 P.2d 524]; *Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725 [257 Cal.Rptr. 708, 771 P.2d 406].) When " 'statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.' " (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 73 [276 Cal.Rptr. 130, 801 P.2d 373], quoting *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) The plain meaning of words in a statute may be disregarded only when that meaning is " 'repugnant to the general purview of the act,' or for some other compelling reason . . . ." (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 219 [188 Cal.Rptr. 115, 655 P.2d 317], quoting 2A Sutherland, Statutory Construction (4th ed. 1973) § 46.01, p. 49.) These principles apply as much to initiative statutes as to those enacted by the Legislature. (See, e.g., *In re Lance W.* (1985) 37 Cal.3d 873, 886 [210 Cal.Rptr. 631, 694 P.2d 744].)

■ Section 1431.2 declares plainly and clearly that in tort suits for personal harm or property damage, no "defendant" shall have "joint" liability for "non-economic" damages, *and* "[e]ach defendant" shall be liable "only" for those "non-economic" damages directly attributable to his or her own "percentage of fault." The statute neither states nor implies an exception for damages attributable to the fault of persons who are immune from liability or have no mutual joint obligation to pay missing shares. On the contrary, section 1431.2 expressly affords relief to every tortfeasor who *is* a liable "defendant," and who formerly *would* have had full joint liability.

The Court of Appeal's contrary reasoning proceeded as follows: Proposition 51 only amended that portion of the Civil Code dealing with "Joint or Several Obligations" (see div. 3, pt. 1, tit. 2, ch. 2, §§ 1431-1432), while leaving intact the maxim that "[e]very one is responsible . . . for an injury occasioned to another by his want of ordinary care or skill . . . ." (§ 1714.) Moreover, official ballot descriptions of the proposed initiative described the joint-and-several-liability rule as involving damage awards against "multiple defendants" or "responsible *parties*" (italics added), some of whom could be forced to pay for the greater fault of other "defendants" or "parties," subject to a right of "equitable reimbursement from other defendants." (See Ballot Pamp., Gen. Elec. (June 3, 1986), Prop. 51, Official Summary of Atty. Gen., p. 32, Analysis by Legis. Analyst, p. 32.) Thus, the voters understood and

intended Proposition 51 to eliminate joint liability only in "ordinary tort actions" involving "multiple defendants [whose] liability for noneconomic damages was formerly joint and several . . . ."

This analysis is flawed. ▮ Title or chapter headings are unofficial and do not alter the explicit scope, meaning, or intent of a statute. (See *People v. Garfield* (1985) 40 Cal.3d 192, 199-200 [219 Cal.Rptr. 196, 707 P.2d 258]; *In re Halcomb* (1942) 21 Cal.2d 126, 130 [130 P.2d 384].) Similarly, ballot materials can help resolve ambiguities in an initiative measure (see, e.g., *Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 245-246 [149 Cal.Rptr. 239, 583 P.2d 1281]), but they cannot vary its plain import.

As noted, section 1431.2 itself contains no ambiguity which would permit resort to these extrinsic constructional aids. The statute plainly attacks the issue of joint liability for noneconomic tort damages root and branch. ▮ In every case, it limits the joint liability of every "defendant" to economic damages, and it shields every "defendant" from any share of noneconomic damages beyond that attributable to his or her own comparative fault. The statute contains no hint that a "defendant" escapes joint liability only for noneconomic damages attributable to fellow "defendants" while remaining jointly liable for noneconomic damage caused by others.[5]

In *Evangelatos*, addressing a vagueness challenge to Proposition 51, we noted plaintiff's "complain[t]," among others, that the initiative's application was unclear in "cases involving absent tortfeasors." (44 Cal.3d at p. 1202.) We invoked the rule that any such "gap" in the statutory scheme could be resolved by judicial interpretation and did not render the initiative unconstitutionally vague. We did not purport to decide whether Proposition 51 was actually ambiguous in the respect plaintiff had asserted. (*Ibid.*)

On closer reflection, we find no such ambiguity. Long before the enactment of Proposition 51, we had held that the "damages" for which defendants were jointly and severally liable were the full amount of the loss

---

[5]Indeed, were we to consider the matters cited by the Court of Appeal, our interpretation would be the same. The placement of section 1431.2 within the group of statutes defining "Joint or Several Obligations" supports, rather than contradicts, our reading of the statute. Nor do the ballot materials suggest a contrary legislative intent. Brief official synopses of the complicated joint and several liability doctrine could hardly be expected to describe every situation in which the former rule, or its proposed amendment by Proposition 51, would apply. The proponents of the initiative simply argued that it reached a "FAIR COMPROMISE" by eliminating the "unfair" application of the " 'deep pocket' law" to "noneconomic" damages while retaining the right of "injured victims" to fully recover their "actual" losses. (Ballot Pamp., Gen. Elec. (June 3, 1986), *supra*, argument in favor of Prop. 51, p. 34, rebuttal to argument against Prop. 51, p. 35.) Nothing in the ballot materials suggested a specific purpose to distinguish workers' compensation cases or other cases involving persons immune from suit.

caused by *all* responsible persons, reduced only by the plaintiff's share of fault. Neither the allocation of fault, nor the amount of a joint and several damage award, "var[ied] by virtue of the particular defendants who happen[ed] to be before the court . . . ." (*American Motorcycle, supra*, 20 Cal.3d at p. 589, fn. 2.)

The express purpose of Proposition 51 was to eliminate the perceived unfairness of imposing "all the damage" on defendants who were "found to share [only] a fraction of the fault." (§ 1431.1, subd. (b).) In this context, the only reasonable construction of section 1431.2 is that a "defendant['s]" liability for noneconomic damages cannot exceed his or her proportionate share of fault *as compared with all fault responsible for the plaintiff's injuries*, not merely that of "defendant[s]" present in the lawsuit. (Cf., *Evangelatos, supra*, 44 Cal.3d at p. 1242, fn. 4, conc. & dis. opn. of Kaufman, J. [damages must be apportioned among " 'universe' of tortfeasors" including "nonjoined defendants"].)

Our *Evangelatos* opinion also described Proposition 51 informally as limiting a culpable defendant's liability for that portion of the damages attributable to "tortfeasors [who] were insolvent." (44 Cal.3d at p. 1198.) We addressed and rejected plaintiff's claim that Proposition 51 denies equal protection of the laws because it discriminates irrationally against persons injured by insolvent tortfeasors. (*Id.*, at pp. 1202-1205.) These discussions, however, did not imply our agreement that Proposition 51 applies only when insolvency prevents some tortfeasors from contributing their fair share of damages. Indeed, in dismissing the equal protection claim, we made clear that "[t]he terms of the proposition itself . . . reflect no legislative intent to discriminate between injured victims on the basis of the solvency of the tortfeasors by whom they are injured; instead, the measure quite clearly is simply intended to limit the potential liability of an individual defendant for noneconomic damages to a proportion commensurate with that defendant's personal share of fault." (*Id.*, at p. 1204.)

Mark and his amici curiae argue that unless we infer an exception to Proposition 51 for third party suits by injured workers, we will create a host of practical litigation problems and will destroy the "delicate" preexisting balance among the rights of employee, employer, and third party tortfeasor. But the principal effect is precisely that intended by the initiative: defendants no longer have to pay an injured employee's noneconomic damages caused by the fault of another, and the employee, like any other tort victim, bears the resulting risk of loss. No substantial reason is asserted, let alone a

"compelling" one, why Proposition 51's manifest policy should not apply in this particular situation.[6]

In sum, section 1431.2 plainly limits a defendant's share of noneconomic damages to his or her own proportionate share of comparative fault. The statute states or implies no exception for third party suits by injured employees. No compelling reason appears to infer such an exception in derogation of the measure's literal words. To the extent the Court of Appeal's judgment is based on a contrary view, it cannot stand.

However, an outright reversal will not finally dispose of this case. Uncertainties remain as to the correct calculation of the net judgment against Up-Right. For example, it is clear, as the Court of Appeal concluded, that the judgment must include a full deduction for the benefits paid by Van Erickson's compensation carrier, because Van Erickson's proportionate share of fault exceeds the amount of benefits paid. However, because the Court of Appeal ruled incorrectly that Proposition 51 does not apply to this case, it did not reach the question whether the credit should be applied exclusively to reduce the balance of economic damages, or should instead be allocated in some fashion between economic and noneconomic damages. The trial court also had no occasion to consider the point because it determined that no credit for compensation benefits was available.

The proper allocation of the benefit credit in a Proposition 51 case is a matter of some difficulty and importance. The issue is not encompassed

---

[6]Amici curiae suggest that an employer has no legal "fault," and thus cannot be included in the "universe" of fault against which a third party's fault is compared. They also urge that application of Proposition 51 to employee suits against third parties would contravene the employee's long-established right to recover both full benefits from the employer and full tort damages from third parties.

The first contention flies in the face of our conclusion in *Associated Construction* that "to the extent allowed by the employer's statutory liability, the employer and third party should share liability as would ordinary concurrent tortfeasors." (22 Cal.3d at p. 841.) Thus, even when the employer does not intervene to recoup benefits, the third party may assert the employer's negligence as a partial defense, whereupon "the trier of fact should determine the employer's degree of fault according to the principles of *American Motorcycle.* . . ." (*Id.*, at p. 842.) The court must then deduct the employer's percentage share of damages from the third party's liability, up to the amount of compensation benefits paid. (*Ibid.*) It is therefore clear that whether the employer is present or absent, its fault is to be allocated as part of the total fault contributing to the employee's injury.

Amici curiae's second argument simply protests the express purpose of Proposition 51. The initiative explicitly shifts to the injured party some of the burden of noncontribution or undercontribution by some tortfeasors. No reason appears why injured workers alone should escape this effect.

within our order granting review,[7] and the parties have not briefed or argued it at any stage. Moreover, our holding in this case may engender other calculation problems not now apparent to us. Under the circumstances, we deem it appropriate to remand the case to the Court of Appeal for recalculation of the judgment in a manner consistent with the principles expressed in this opinion.

## DISPOSITION

The judgment of the Court of Appeal, Fifth Appellate District, is reversed, and the cause is remanded to that court with directions, after briefing and argument by the parties, to determine the amount of the judgment against defendant Up-Right, Inc., in light of the principles herein expressed.

Lucas, C. J., Mosk, J., Panelli, J., Kennard, J., Arabian, J., and George, J., concurred.

[7]Our order provided that "[t]he issue to be argued before this court shall be limited to whether Civil Code section 1431.2 applies to limit a tortfeasor's liability for non-economic damages in proportion to that defendant's fault where other tortfeasors at fault are not subject to suit."