TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-315 |
| of | : | |
| | : | November 21, 1997 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE LOUIS B. GREEN, COUNTY COUNSEL, EL DORADO COUNTY, has requested an opinion on the following question:

May a property owner apply for review, equalization, and adjustment of a county assessor's assessment with respect to the value of all property at the location of the owner's business after a mandatory audit of the owner's books and records has been made by the county assessor that discloses both an underassessment and overassessment of some of the property, resulting in no change to the original assessment?

CONCLUSION

A property owner may apply for review, equalization, and adjustment of a county assessor's assessment with respect to the value of all property at the location of the owner's business after a mandatory audit of the owner's books and records has been made by the county assessor that discloses both an underassessment and overassessment of some of the property, resulting in no change to the original assessment.

ANALYSIS

The facts giving rise to this request for our opinion involve a corporation that was dissatisfied with its property tax assessments over a four-year period. It did not, however, timely file an appeal of the assessments with the local county board of equalization. Rather, it waited until after the county assessor had conducted a statutorily required audit of the corporation's books and records (Rev. & Tax. Code, § 469) **Footnote No. 1** which found both an underassessment and overassessment of some of the property, resulting in no change to the original assessments. May the property owner now seek review, equalization, and adjustment of the original assessments under these circumstances? We conclude that the corporation may seek review within 60 days of being notified of the audit results.

With respect to property assessments, the Constitution generally requires that "[a]ll property is taxable and shall be assessed at the same percentage of fair market value." (Cal. Const., art. XIII, § 1, subd. (a); see § 201.) "The assessor shall assess all property subject to general property taxation on the [annual] lien date . . . ." (§ 401.3.) The assessed value of the property is listed on the assessment roll (§ 601) which the assessor prepares for the county auditor (§ 617). It is the duty of the county board of equalization to "equalize the values of all property on the local assessment roll by adjusting individual assessments." (Cal. Const., art. XIII, § 16.) Normally, a property owner must file an application with the county board of equalization by September 15 when seeking a reduction of a tax assessment for a particular year. (§ 1603.) Here, the corporation did not file such applications by September 15 for the years in question.

Instead, the county assessor made an independent audit of the property owner's books and records pursuant to the provisions of section 469. Section 469 states in part:

"In any case in which locally assessable trade fixtures and business tangible personal property owned, claimed, possessed, or controlled by a taxpayer engaged in a profession, trade, or business has a full value of three hundred thousand dollars ($300,000) or more, the assessor shall audit the books and records of that profession, trade, or business at least once each four years. . . .

"Upon completion of an audit of the taxpayer's books and records, the taxpayer shall be given the assessor's findings in writing with respect to data that would alter any previously enrolled assessment.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"If the result of an audit for any year discloses property subject to an escape assessment, then the original assessment of all property of the assessee at the location of the profession, trade, or business for that year shall be subject to review, equalization and adjustment by the county board of equalization . . . .

"If the audit for any particular tax year discloses that the property of the taxpayer was incorrectly valued or misclassified for any cause, to the extent that this error caused the property to be assessed at a higher value than the assessor would have entered on the roll had the incorrect valuation or misclassification not occurred, then the assessor shall notify the taxpayer of the amount of the excess valuation or misclassification, and the fact that a claim for cancellation or refund may be filed with the county . . . ."

Property is subject to an "escape assessment" for a variety of reasons (§§ 531-538), including when the property owner has underreported its cost to the assessor (§ 531.4). In this particular case, the property owner in question both underreported and overreported the cost of its property over the four-year audit period. While the assessor's audit thus disclosed that certain of the property could be subject to an escape assessment, no escape assessments were issued due to the overreporting of the cost of other property.

Under these circumstances, may the property owner apply to the county board of equalization for a reduction of its "original assessment of all property . . . at the location of the profession, trade, or business for that year" (§ 469)? The value of the land, buildings, trade fixtures, and business tangible personal property of the corporation for each year the audit disclosed an escape assessment would be subject to the review. Alternatively, is the property owner bound by the original limitations period, the September 15 deadline, for filing applications for review?

Subdivision (e) of section 1605 provides an additional period for filing review applications when a property owner's property is subject to an escape assessment due to a section 469 audit. Section 1605,

subdivision (e) provides:

> "If an audit of the books and records of any profession, trade, or business pursuant to Section 469 discloses property subject to an escaped assessment for any year, then the original assessment of all property of the assessee at the location of the profession, trade, or business for that year shall be subject to review, equalization and adjustment by the county board of equalization . . . . The application shall be filed with the clerk no later than 60 days after the date on which the assessee was notified. Receipt by the assessee of a tax bill based upon that assessment shall suffice as that notice."

A property owner is thus given 60 days after being notified of the results of a section 469 audit to file an application for review with the county board of equalization with respect to the valuation of all property at the location for the year or years in question.

The requirement of sections 469 and 1605 are met for filing an application for review if the audit discloses "property subject to an escape assessment." **Footnote No. 2** In this context, the term "subject to" commonly means exposed to, disposed to, or being under the contingency of. (See Webster's Third New Internat. Dict. (1961), p. 2275.) The statutes do not require the actual issuance of an escape assessment, only that the audit disclose some or all of the property as being under the contingency of an escape assessment. We are to interpret statutes by consulting "the words themselves, giving them their usual and ordinary meaning." (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.)

It is argued, nonetheless, that a property owner should not be allowed to obtain an additional period for filing a review application by underreporting the cost of some of its property. Such an argument may be addressed to the Legislature, not the Attorney General. Concededly, section 1605 authorizes a new application period when an escape assessment is made. Here, we are concerned with an overreporting of the cost of property by a property owner that prevented an escape assessment from being made. Should a property owner be penalized for overreporting the cost of some of its property and paying too much in property taxes with respect to such property? That would be the result of allowing a new application period for property owners who underreported the cost of their property, while denying a new application period for those who both underreported and overreported their costs resulting in no change being made in the original assessments. We do not view the Legislature as intending such anomalous results. "[I]t is presumed the Legislature intended reasonable results consistent with its expressed purpose, not absurd consequences." (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1165-1166.)

We have examined the legislative history of the statutory language at issue. (See Stats. 1978, ch. 732, §§ 1, 4.) Nothing therein may be said to be inconsistent with our interpretation of sections 469 and 1605 that applications for review may be filed in the described circumstances. Our interpretation is also consistent with the administrative interpretation of the State Board of Equalization ("Board"), the agency responsible for implementing this statutory scheme. (Gov. Code, § 15606.) In a publication dated March 30, 1984, the Board advised county officials as follows:

> "Frequently, an assessor's audit discloses both under and overassessments. Section 533 provides in such cases that the appropriate tax liabilities and refunds shall be offset, so the resulting tax bill or refund is a net figure. If the refund is greater than or equal to the escape, then no `escape assessment' is enrolled, and there is a question as to whether the taxpayer is entitled to an equalization hearing under Sections 469 and 1605.

> "The Board's legal staff has reviewed this question and determined that the taxpayer is entitled to an equalization hearing under the above circumstance.

> "The critical phrase (in the third paragraph of section 469, and also in the fourth paragraph of section 1605) is `property subject to an escape assessment.' That language does not

specify that an escape assessment must be enrolled, only that the audit disclosed property that should have been assessed but was not. It would be a tortured reading of the law to conclude that property is not `subject to an escape assessment' merely because some other error offset the escape.

"Therefore, whenever escaped property is discovered as a result of an assessor's audit, the taxpayer is entitled to equalization on the entire property for the year of such escape, regardless of whether the assessor actually enrolls an escape assessment. The only limitation on the taxpayer's right to equalization is the portion of any assessment which was previously the subject of an equalization hearing."

This administrative construction by the Board is entitled to great weight. (See *People* ex rel. *Lungren* v. *Superior Court* (1996) 14 Cal.4th 294, 309; *Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 460.)

In answer to the question presented, therefore, we conclude that a property owner may apply for review, equalization, and adjustment of a county assessor's assessment with respect to the value of all property at the location of the owner's business after a mandatory audit of the owner's books and records has been made by the county assessor that discloses both an underassessment and overassessment of some of the property, resulting in no change to the original assessment.

\* \* \* \* \*

**Footnote No. 1**
All references hereafter to the Revenue and Taxation Code are by section number only.
**Footnote No. 2**
Subdivision (e) of section 1605 refers to an "escaped" assessment, possibly indicating the occasion of the escape at the time of the original assessment rather than the corrective assessment resulting from the section 469 audit.