Filed 10/30/13  Doctors Company v. Sherman Oaks Hospital CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DOCTORS COMPANY,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>SHERMAN OAKS HOSPITAL,<br><br>　　　Defendant and Appellant. | B246818<br><br>(Los Angeles County<br>Super. Ct. No. LC 088772) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Judge.  Affirmed with modifications.

Randolph M. Even and Associates, Randolph M. Even; Greines, Martin, Stein & Richland and Robert A. Olson for Defendant and Appellant.

McCurdy & Leibl and John D. McCurdy for Plaintiff and Respondent.

\* \* \* \* \* \*

"Before the enactment of Proposition 51, a defendant who settled the plaintiff's entire claim was entitled to seek indemnification from concurrent tortfeasors for its payment of their joint obligation to the plaintiff. [Citations.] Now, however, joint liability is restricted to economic damages, and the right to seek indemnity after settlement is correspondingly limited." (*Union Pacific Corp. v. Wengert* (2000) 79 Cal.App.4th 1444, 1448.) It logically follows that equitable indemnity is available only for the portion of a settlement attributable to economic damages. (*Id*. at p. 1446.) This case requires us to determine the portion of a good faith settlement attributable to economic damages and the portion attributable to noneconomic damages. We modify the amount of the judgment requiring one defendant to equitably indemnify another and affirm.

### FACTS AND PROCEDURE

The facts are undisputed. Elizabeth Bovaird filed a lawsuit in December 2005, alleging medical malpractice by Drs. Hossein Razavi, Sailila Sharma, Shivdyal Singh, and appellant Sherman Oaks Health System (the Hospital). The Doctors Company's (Doctors') predecessor insured Singh and Sharma. Razavi settled for $1 million and obtained good faith settlement from the trial court. The trial court did not apportion his settlement between economic and noneconomic damages.

Sharma and Singh each settled for $1 million, and the Hospital settled for $250,000. Following the settlements totaling $3,250,000, Bovaird dismissed her lawsuit.

On March 2, 2010, Doctors sued the Hospital for equitable indemnity. Jurors were asked to apportion liability between the defendants in the underlying malpractice lawsuit. Jurors assessed responsibility as follows: Hospital, 11 percent; Sharma, 8 percent; Singh, 13 percent; and Razavi, 68 percent. Jurors were not asked either to apportion economic and noneconomic damages or to determine the total amount of damages. Doctors and the Hospital stipulated that the noneconomic damages totaled $750,000.

The trial court ordered the Hospital to equitably indemnify Doctors in the amount of $523,437. This amount was based on Doctors' approach of calculating Razavi's noneconomic damages by determining 68 percent of $750,000 (the amount stipulated by

2

the parties to be the total noneconomic damages) and then concluding the remaining balance constituted payment for economic damages. The trial court rejected the Hospital's approach of calculating the overall ratio of noneconomic and economic damages and applying that ratio to all of the settlements including Razavi's. The Hospital appealed, challenging only the trial court's calculation of damages.

## DISCUSSION

The sole issue on appeal concerns the application of the Fair Responsibility Act of 1986, known as Proposition 51, codified in Civil Code section 1431.2 (section 1431.2), to determine the amount of damages owed by the Hospital to equitably indemnify Doctors. Section 1431.2 provides in pertinent part: "(a) In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."

The influential opinion in *Espinoza v. Machonga* (1992) 9 Cal.App.4th 268 (*Espinoza*) established a formula for segregating economic and noneconomic damages in a defendant's undifferentiated settlement payment (i.e. a payment that did not separate economic and noneconomic damages). In *Espinoza*, one defendant settled and the other went to trial (and a third was found not liable). The court calculated the ratio of noneconomic damages in the jury award and then applied the same ratio to the settling defendant's undifferentiated settlement. (*Id*. at p. 277.) The nonsettling defendant had to make up for the economic damages not paid in the settlement. (*Ibid*.) The *Espinoza* formula has been consistently followed. (*Wilson v. John Crane, Inc.* (2000) 81 Cal.App.4th 847, 864; *Ehret v. Congoleum Corp.* (1999) 73 Cal.App.4th 1308, 1312; *Conrad v. Ball Corp.* (1994) 24 Cal.App.4th 439, 443-444; *Poire v. C.L. Peck/Jones Brothers Construction Corp.* (1995) 39 Cal.App.4th 1832, 1841.) Under the *Espinoza* formula: "When prior recoveries have not previously been allocated in a manner found by the court to be in good faith, the posttrial allocation of prior settlements should mirror

3

the jury's apportionment of economic and noneconomic damages." (*Jones v. John Crane, Inc.* (2005) 132 Cal.App.4th 990, 1006.)

*Mayes v. Bryan* (2006) 139 Cal.App.4th 1075 (*Mayes*) applied the *Espinoza* formula in the context of a medical malpractice claim. In *Mayes*, doctors that settled with plaintiffs were adjudicated 80 percent responsible for total damages, and defendants who went to trial were adjudicated 20 percent responsible. (*Id*. at p. 1087.) The settling defendants paid $650,000. Once noneconomic damages were reduced to comply with the Medical Injury Compensation Reform Act of 1975 (Civ. Code, § 3333.2), the jury verdict totaled $1,616,357, comprised of $1,366,357 in economic damages and $250,000 in noneconomic damages. (*Id*. at p. 1099.) As required by *Espinoza*, the *Mayes* court calculated the ratio of economic (84.5 percent) and noneconomic damages (15.5 percent). (*Ibid*.) Using this ratio, the court then determined the settling defendants paid $549,250 in economic damages (84.5% x $650,000 = $549,250). The nonsettling defendants were liable for the remainder of the economic damages and for their proportionate share of the noneconomic damages. (*Ibid*.)

*Mayes* explained the following principles arising out of section 1431.2: "[E]ach defendant is only responsible for the percentage of noneconomic damages in proportion to his or her proportionate fault." (*Mayes, supra*, 139 Cal.App.4th at p. 1102.) Defendants' liability for noneconomic damages could "not exceed their 20 percent share based on the jury's determination that they were only 20 percent at fault." (*Id*. at p. 1103.) "Plaintiffs should bear the burden of undercontribution of the settling parties" for noneconomic damages. (*Ibid*.)

This case is similar but not identical to *Espinoza* and *Mayes*. Both *Espinoza* and *Mayes* involved jury trials, and in both jurors determined the amount of economic and noneconomic damages. The *Espinoza* and *Mayes* courts focused on the offset available to a defendant who went to trial. The verdicts in *Espinoza* and *Mayes* allowed the courts to easily differentiate the economic from the noneconomic damages. In contrast here, all defendants settled; the issue is equitable indemnity not offset; and jurors were asked only to assess responsibility, not to calculate economic and noneconomic damages.

4

Notwithstanding those key distinctions, the critical question -- how to apportion a settling defendant's settlement (Razavi's) between economic and noneconomic damages -- is the same in this case as in *Espinoza* and *Mayes*.

Because the question is the same in this case as in *Espinoza*, the *Espinoza* formula provides the best framework for segregating economic and noneconomic damages in Razavi's settlement consistent with section 1431.2. (See *Rashidi v. Moser* (2013) 219 Cal.App.4th 1170, 1177 [*Espinoza* and its progeny establish method for applying allocations of jury verdict to settlements].) No evidence in this case supports the conclusion that the ratio of economic and noneconomic damages in Razavi's settlement should differ from that in the other defendants' settlements. Because jurors were not asked to assess the total amount of damages, no evidence supports Doctors' argument that the $3,250,000 total settlement amount fails to represent the total damages (including both economic and noneconomic). It is undisputed that once the *Espinoza* formula is applied to Razavi's settlement to apportion it using the same percentage of economic and noneconomic damages as the other settlements, the Hospital owes Doctors $402,644, not the $523,437 ordered by the court. The judgment must be modified accordingly.

Doctors argues that Razavi's settlement should be apportioned simply by taking 68 percent of $750,000 based on the jury's determination of responsibility and the party's stipulation of noneconomic damages. Doctors relies on *Paradise Valley Hospital v. Schlossman* (1983) 143 Cal.App.3d 87 for this conclusion. The problem with Doctors' argument is that *Paradise Valley Hospital* was decided prior to Proposition 51 and does not discuss apportionment of an undifferentiated settlement. Doctors' calculation does not account for the fact that Singh, Sharma and the Hospital are liable for Razavi's share of economic damages but are not liable for his share of noneconomic damages. There is no basis to conclude that Razavi's settlement represented 68 percent noneconomic damages and only 32 percent economic damages. The jury concluded that Razavi was 68 percent liable for the total damages, not that he was 68 percent liable for the noneconomic damages.

5

**DISPOSITION**

The amount of the judgment is modified from $523,437 to $402,644. As modified, the judgment is affirmed. Appellant, the Hospital, is entitled to costs on appeal.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.


6