[No. A119316. First Dist., Div. Five. Apr. 17, 2009.]

DENNIS KOEPNICK, Plaintiff and Respondent, v.
KASHIWA FUDOSAN AMERICA, INC., Defendant and Appellant.

COUNSEL

Horvitz & Levy, Peter Abrahams, Peder K. Batalden; Law Offices of Dennis P. Isaac and G. Russell Clark for Defendant and Appellant.

Blackman Legal Group, Clifford A. Blackman and Jacob Shapiro for Plaintiff and Respondent.

OPINION

**SIMONS, Acting P. J.**—In 1986, the electorate enacted Proposition 51, modifying the doctrine of joint and several liability in tort cases. (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 596 [7 Cal.Rptr.2d 238, 828 P.2d 140].) Civil Code section 1431.2, the key provision in Proposition 51, provides in relevant part: "(a) In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."

■ Plaintiff/respondent Dennis Koepnick (Koepnick) was injured in an elevator accident in a building owned by defendant/appellant Kashiwa Fudosan America, Inc. (Kashiwa). In its special verdict, the jury found that the elevator company, which was responsible for the elevator's maintenance and repair, and Kashiwa were both negligent and apportioned their responsibility for causing Koepnick's harm. The trial court ruled Kashiwa owed Koepnick a nondelegable duty to maintain its elevator in a safe condition and, as a consequence, Proposition 51 did not limit Kashiwa's liability for noneconomic damages to several liability only. We reject Kashiwa's challenge to this ruling and affirm.

## BACKGROUND[1]

Kashiwa owned a building in South San Francisco where the subject incident occurred. Cushman & Wakefield, the property manager, was an agent of Kashiwa. Otis Elevator Company (Otis), an independent contractor working for Kashiwa, was responsible for the maintenance and repair of the elevators at the building. American Commercial Security Service (ACSS), an independent contractor working for Kashiwa, provided onsite security for the building.

On March 15, 2004, Koepnick, employed by a commercial air-conditioning company, was delivering air-conditioning registers to the second floor of the building. A building engineer instructed him to use the No. 4 elevator, and Koepnick made numerous trips to and from the second floor using that elevator. On Koepnick's final descent, he heard a "loud banging explosion" above him, and the elevator "shuddered back and forth," causing him to fall. As a result of the incident, Koepnick suffered back injuries which required spinal surgery.

In February 2006, Koepnick filed the instant personal injury action against Kashiwa, Otis, and others. Prior to trial, Koepnick settled with Otis for $110,000 and his claims against Otis were dismissed with prejudice. With the exception of Kashiwa, the remaining defendants were also dismissed with prejudice.

The jury returned a special verdict which included the following findings: (1) Kashiwa, including its agents and independent contractors, was negligent and a substantial factor in causing Koepnick's harm; (2) Otis and ACSS were

---

[1] Because Kashiwa acknowledges that substantial evidence supports the jury's verdict, a detailed recitation of the background facts is unnecessary.

each, acting alone, negligent; (3) Otis's negligence was a substantial factor in causing Koepnick's harm; and (4) ACSS's negligence was not a substantial factor in causing Koepnick's harm. The jury awarded Koepnick $1,007,323.82 in economic damages and $4.25 million in noneconomic damages. It found Kashiwa, including Cushman & Wakefield, 75 percent at fault and Otis, acting alone, 25 percent at fault.

Thereafter, Kashiwa argued that Proposition 51 applied and entitled Kashiwa to allocation of the noneconomic damages according to the fault percentage found by the jury. Koepnick argued that because Kashiwa owed him a nondelegable duty, Proposition 51 did not apply, and Kashiwa was responsible for 100 percent of the noneconomic damages. The trial court agreed with Koepnick.

Judgment was entered against Kashiwa in the amount of $5,147,323.82 plus costs totaling $160,466.18. Following the denial of Kashiwa's motion for new trial, it filed a timely appeal of the judgment.

## DISCUSSION

Kashiwa contends Labor Code section 7300 et seq., a statutory scheme regarding elevator ownership, maintenance and repair, renders the nondelegable duty rule inapplicable in this case. Thus, Kashiwa argues Proposition 51 does apply, and Kashiwa should be severally liable for Koepnick's noneconomic damages. We conclude the trial court correctly ruled that Proposition 51 does not apply to this action.

### I. *The Doctrine of Nondelegable Duties*

■ At common law, a person who hired an independent contractor was generally not liable for injuries suffered by third parties caused by the contractor's negligence in performing the work. (*Srithong v. Total Investment Co.* (1994) 23 Cal.App.4th 721, 725–726 [28 Cal.Rptr.2d 672] (*Srithong*), citing *Privette v. Superior Court* (1993) 5 Cal.4th 689, 693 [21 Cal.Rptr.2d 72, 854 P.2d 721].) The doctrine of nondelegable duties is an exception to this general rule of nonliability. (*Brown v. George Pepperdine Foundation* (1943) 23 Cal.2d 256, 259–260 [143 P.2d 929] (*Brown*); *Srithong*, at p. 726.) *Brown* described the doctrine of nondelegable duties: " 'The duty which a possessor

of land owes to others to put and maintain it in reasonably safe condition is nondelegable. If an independent contractor, no matter how carefully selected, is employed to perform it, the possessor is answerable for harm caused by the negligent failure of his contractor to put or maintain the buildings and structures in reasonably safe condition, irrespective of whether the contractor's negligence lies in his incompetence, carelessness, inattention or delay.' " (*Brown*, at p. 260, quoting Rest. Torts, § 422, com. a, pp. 1138–1139.)[2]

■ In *Brown*, a child was injured after falling down an elevator shaft in an apartment building owned by the appealing defendant, who had contracted with a codefendant elevator maintenance company for weekly inspections of the elevator. (*Brown, supra*, 23 Cal.2d at pp. 258–259.) Applying the doctrine of nondelegable duties, the Supreme Court held, "A landlord cannot escape liability for failure to maintain elevators in a safe condition by delegating such duty to an independent contractor. [Citations.]" (*Id*. at pp. 259–260.) The court concluded the trial court erred in instructing the jury that the negligence of the elevator maintenance company could not be imputed to the building owner. (*Id*. at p. 259.)

II. *The* Srithong *Case*

In *Srithong*, the owner of a minimall leased a portion of the premises to a restaurant, and contracted with a roofing company to repair the building's roof. The plaintiff was injured when roofing tar material being applied by the roofing company seeped through the ceiling and fell on his arm. (*Srithong, supra*, 23 Cal.App.4th at p. 724.) The trial court ruled that the minimall owner had a nondelegable duty to maintain and repair the roof, and the owner and roofing company were presumed negligent under the doctrine of res ipsa loquitur. (*Ibid*.) The jury found the owner 5 percent at fault and the roofing company 95 percent at fault, and the trial court determined that under Proposition 51, the owner was liable for 5 percent of the plaintiff's noneconomic damages. (*Srithong*, at p. 725.)

■ *Srithong* considered whether Proposition 51 applies where a defendant's liability is based on a nondelegable duty. (*Srithong, supra*, 23 Cal.App.4th at p. 724.) It discussed the nondelegable duty doctrine in the

---

[2] Restatement of Torts, section 422 provides: "A possessor of land who entrusts the repair of a building or other structure thereon to an independent contractor is subject to the same liability to persons within or outside the land who are injured by the contractor's negligent failure to put or maintain the building or structure in reasonably safe condition as though he had retained the making of the repairs in his own hands."

context of vicarious liability: "Vicarious liability 'means that the act or omission of one person . . . is imputed by operation of law to another[.]' [Citation.] Thus, vicarious liability is a departure from the general tort principle that liability is based on fault. [Citation.]" (*Id.* at p. 726.) *Srithong* noted that Proposition 51 is directed at joint and several liability and therefore principles of comparative fault, whereas vicarious liability is based on status or relationship, not fault. "Thus, where vicarious liability is involved, there is no fault to apportion." (*Srithong*, at p. 728.) It stated that Proposition 51 does not abrogate a person's vicarious liability for the tortious acts of others or for noneconomic damages caused by those acts. (*Srithong*, at p. 728.)[3]

■ *Srithong* went on to explain: "[T]he nondelegable duty rule is a form of vicarious liability because it is not based on the personal fault of the landowner who hired the independent contractor. Rather, the party charged with a nondelegable duty is '*held liable for the negligence of his agent*, whether his agent was an employee or an independent contractor.' [Citation.] . . . [¶] The rationale of the nondelegable duty rule is 'to assure that when a negligently caused harm occurs, the injured party will be compensated by the person whose activity caused the harm[.]' [Citation.] The 'recognition of nondelegable duties tends to [e]nsure that there will be a financially responsible defendant available to compensate for the negligent harms caused by that defendant's activity[.]' [Citation.] Thus, the nondelegable duty rule advances the same purposes as other forms of vicarious liability." (*Srithong, supra*, 23 Cal.App.4th at p. 727, fn. omitted.)

*Srithong* concluded that irrespective of its fault, the minimall owner was vicariously liable for the roofing company's negligence as a result of the owner's status as a lessor under the nondelegable duty doctrine. Thus, the owner was 100 percent liable for the entire award of economic and noneconomic damages. (*Srithong, supra*, 23 Cal.App.4th at p. 728.)

III. *Labor Code Section 7300 et seq.*

Kashiwa concedes the facts in *Brown* are similar to those in this case, but contends the *Brown/Srithong* analysis has been undermined by 2002

---

[3] The *Srithong* court cited cases that held Proposition 51 inapplicable to reduce the vicarious liability of an employer under principles of respondeat superior and to reduce the statutory liability under Vehicle Code section 17150 imposed on vehicle owners for injuries caused by a person operating a vehicle with the owner's permission. (See *Miller v. Stouffer* (1992) 9 Cal.App.4th 70, 83–85 [11 Cal.Rptr.2d 454]; *Rashtian v. BRAC-BH, Inc.* (1992) 9 Cal.App.4th 1847, 1849 [12 Cal.Rptr.2d 411].)

amendments to Labor Code section 7300 et seq. (Stats. 2002, ch. 1149).[4] Kashiwa's argument, while creative, lacks merit. It begins with a reference to Restatement of Torts, section 422, comment d (hereafter Comment d),[5] which provides in part: "A possessor of land who employs an independent contractor to repair a structure thereon is not subject to liability for the contractor's failure to maintain the structure in safe condition unless similar conduct on the part of the employer, *had he retained the making of the repairs in his own hands*, would have subjected him to liability." (Com. d, p. 1141, italics added.)

Kashiwa then references Senate Bill No. 1886 (2001–2002 Reg. Sess.), which, in 2002, added and amended sections 7300 to 7324.2 in division 5, part 3, chapter 2 of the Labor Code (hereafter Chapter 2).[6] Kashiwa asserts these provisions bar landowners from repairing and maintaining their elevators. Kashiwa relies on subdivision (a) of section 7311.1, which provides, in part: "On and after June 30, 2003, no conveyance subject to this chapter shall be . . . materially altered, tested, maintained, repaired, or serviced by any person, firm, or corporation unless the person, firm, or corporation is certified by the [Division of Occupational Safety and Health] as a certified qualified conveyance company."

As the argument runs, the nondelegable duty recognized in the Restatement is subject to the exception in Comment d for a landowner who did not have the right to do the challenged maintenance work "in his own hands," and section 7311.1 eliminated that right.

The argument fails. Kashiwa misreads Comment d. It does nothing more than provide that a nondelegable duty on the part of the landowner arises only if the owner would have been liable had he engaged in similar conduct while performing the work himself. Kashiwa interprets Comment d as if the language "had he retained the making of the repairs in his own hands" read "had [the owner had the right to make] the repairs in his own hands." Perhaps this would be a good rule, but it is not the one enacted by the Legislature. Kashiwa also misinterprets section 7311.1 and Chapter 2. Neither section 7311.1 nor Chapter 2 precludes a landowner from maintaining or repairing its own elevators so long as it is properly certified.

---

[4] All further undesignated section references are to the Labor Code.

[5] Comment d has been superseded without substantive change by Restatement Second of Torts, section 422, comment f, page 408.

[6] Chapter 2 is entitled "Elevators."

Finally, section 7324.1 expressly rejects Kashiwa's attempt to rely on section 7311.1 to limit its liability. Section 7324.1 provides, "This chapter shall not be construed to relieve or lessen the responsibility or liability of any person, firm, or corporation owning, operating, controlling, maintaining, erecting, constructing, installing, altering, testing, or repairing any conveyance or other related mechanisms covered by this chapter for damages to any person or property caused by any defect therein." Kashiwa interprets the phrase "defect therein" in section 7324.1 as excluding liability based on a conveyance that is negligently maintained as distinguished from product liability based on a conveyance that has been defectively manufactured or designed or contains inadequate instructions or warnings. Thus, Kashiwa argues that section 7324.1 applies to preserve common law liability for defective conveyances, but not liability for defectively maintained conveyances. The argument is meritless.

"Defect" is not included in the list of definitions contained in section 7300.1. Thus, the plain meaning of the term "defect" controls. The dictionary defines "defect" as "an imperfection that impairs worth or utility." (Webster's 9th New Collegiate Dict. (1987) p. 333.) Clearly, negligent maintenance of an elevator can result in its imperfection.

■  Section 7324.1 makes clear that section 7300 et seq. do not "relieve or lessen" the liability of one "owning, . . . *maintaining*, . . . or repairing" an elevator for personal injury caused by an elevator that is defective. (Italics added.) By its own terms, section 7324.1 assumes an elevator may be rendered defective due to maintenance or repair and preserves liability for that defect against any argument rooted in Chapter 2. Further, Kashiwa fails to explain how its strained interpretation of section 7324.1, which effectively eliminates one potential source of compensation for injured plaintiffs, serves the legislative purpose "to assure . . . the safety of the public and of workers." (§ 7300.)

Substantial evidence was presented that Otis's failure to detect and replace a plastic liner resulted in the liner breaking, the elevator cable loosening and falling off the sheave, and the elevator stopping suddenly. Pursuant to section 7324.1, Kashiwa's nondelegable liability for Koepnick's damages is not relieved or lessened by the enactment of section 7300 et seq. The trial court correctly ruled that Proposition 51 does not apply.[7]

---

[7] For the same reason, we reject Kashiwa's claim that the court erred in instructing the jury that it owed a nondelegable duty.

## DISPOSITION

The judgment is affirmed. Koepnick is entitled to costs on appeal.

Needham, J., and Stevens, J.,[*] concurred.

---

[*]Retired Associate Justice of the Court of Appeal, First District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.