Filed 6/1/21  Ruckman v. Wildwood Farms CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GLORIA RUCKMAN et al., | F078655 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. Nos. BCV-15-101699, BCV-16-101264 & BCV-17-100722) |
| WILDWOOD FARMS, LLC, | |
| Defendant and Respondent. | **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Stephen D. Schuett, Judge.

Rodriguez & Associates, Daniel Rodriguez, Chantal A. Trujillo; Esner, Chang & Boyer, Andrew N. Chang and Steven T. Swanson for Plaintiffs and Appellants.

Clifford & Brown, Daniel T. Clifford; Hayes, Scott, Bonino, Ellingson, Guslani, Simonson & Clause, Mark G. Bonino and Ryan P. Snyder for Defendant and Respondent.

-ooOoo-

While farmland owned by defendant Wildwood Farms, LLC (Wildwood) was being excavated in preparation for planting almond trees, the contractor performing the work ruptured a high-pressure underground gas line, resulting in an explosion and fire

that killed the driver of the tractor and injured several neighbors on adjoining property. The injured neighbors—namely, plaintiffs Gloria Ruckman, Robert Ruckman, Robert Elias Ruckman, a minor, Amalia Leal and Gildardo Leal (plaintiffs)—filed the present action against Wildwood, among other defendants, alleging various legal theories of negligence and strict liability. Wildwood moved for summary judgment, asserting that under the undisputed facts it was not liable to plaintiffs under any of the causes of action. The trial court granted Wildwood's motion for summary judgment, and plaintiffs now appeal from the resulting entry of judgment. Plaintiffs argue the trial court erred in granting the motion for summary judgment because, allegedly, triable issues of fact existed on their claims premised on peculiar risk, nondelegable duty and ultrahazardous activity. We hold that plaintiffs are correct regarding the claim of peculiar risk. Accordingly, the judgment is reversed and the case is remanded to the trial court with directions to enter a new order denying summary judgment but granting summary adjudication of all causes of action other than peculiar risk.

**FACTS AND PROCEDURAL HISTORY**

The Complaint

The operative pleading at the time of Wildwood's motion for summary judgment was plaintiffs' third amended complaint, which sought recovery of damages for personal injuries and property damages caused by the fire and explosion triggered by the ruptured underground gas line. The pleading included causes of action for general negligence, strict liability, and premises liability arising from the underlying facts. The core facts as alleged therein are straightforward. The explosion occurred on November 13, 2015, near Wible Road and Houghton Road south of Bakersfield, California, when a tractor operator excavating the soil in the area of the underground gas line struck and ruptured the gas line. At the time of the explosion, plaintiffs Gloria Ruckman, minor infant Robert Elias Ruckman, and Amalia Leal were inside the Ruckmans' house. The explosion caused the entire house and surrounding property to catch fire. Although they were able to flee to

2.

safety, serious burns were suffered, and a loss of consortium resulted in the spousal relationship of Gloria and Robert Ruckman, as well as in that of Amalia and Gildardo Leal.

The defendants named in the third amended complaint included the following: Wildwood, the owner of the property where the excavation[1] took place; Ag-Wise Enterprises, Inc. (Ag-Wise), an independent contractor hired by Wildwood; and Big N Deep Ag Development Co. (BND), the subcontractor hired by Ag-Wise to perform the excavation work. Pacific Gas and Electric Company (PG&E), the utility company that owned and operated the underground gas line, was also named as a defendant. The gas line in question was allegedly only a few feet below the surface. According to the first cause of action for negligence, Wildwood and/or the other defendants were allegedly negligent because they breached a duty of care to plaintiffs relating to the safe performance of this dangerous excavation work on the property. As part of the negligence claim, it was further alleged that Ag-Wise hired BND to perform the work even though it knew BND had struck the underground gas line on a previous job. It was also alleged that, on the day of the incident, BND's permit from PG&E was allegedly expired.[2]

In addition to asserting a negligence cause of action against defendants, the third amended complaint alleged as a second cause of action that defendants Wildwood and/or Ag-Wise were strictly and/or vicariously liable. Plaintiffs alleged that the presence of an active and explosive gas line only a few feet below the surface was "likely to create a *peculiar risk* of explosion unless special precautions, including but not limited to such as

---

[1]    The excavation work for tree planting is sometimes referred to in the record by various other terms such as digging, ripping or deep soil ripping.

[2]    We note the deposition transcripts, pleadings and briefing in the appellate record in this case use various terminology to describe a permit from PG&E to dig near the location of an underground gas line, including a "USA [Underground Service Alert] permit," a "USA ticket" or an "811 permit."

3.

shutting off the active gas line and/or marking the active gas line, were taken to ensure the … gas line was not pierced resulting in an explosion." (Italics added.) The circumstances also allegedly created a "*nondelegable duty*" relating to the condition of the property and the prevention of the risk of harm to plaintiffs. Additionally, or in the alternative, it was alleged that "the excavation, digging, and/or 'soil ripping' " only a few feet above the active and explosive gas line conducted at the subject property "was *ultra hazardous* and/or abnormally dangerous activity …."

A third cause of action asserted against Wildwood was for premises liability. The claim for premises liability reiterated that Wildwood's duty to exercise reasonable care in the ownership and maintenance of its property in a safe manner was "a *nondelegable legal duty*."

Wildwood's Motion for Summary Judgment

On June 6, 2018, Wildwood filed a motion for summary judgment on three grounds: (1) Wildwood was not vicariously liable for the negligence of independent contractors or subcontractors; (2) plaintiffs' premises liability claim fails because the undisputed facts show Wildwood did not breach any duty owed to plaintiffs; and (3) plaintiffs' strict liability claim fails as a matter of law because digging, excavating and/or ripping of agricultural land is not an ultrahazardous activity.

In support of its motion for summary judgment, Wildwood asserted it had contractually delegated all aspects of the work to an independent contractor, i.e., Ag-Wise, including any safety and permit requirements of the work. Further, Wildwood noted both Ag-Wise and BND were aware of the existence of the gas pipeline, so even assuming Wildwood as the owner had a duty to warn, it was purportedly satisfied. For these reasons, Wildwood argued in its motion that the general rule should apply here that a hirer is not vicariously liable for the negligence of an independent contractor to whom the details of the work have been delegated. Wildwood further asserted, based on its assessment of the undisputed facts, that the exception to the general rule with respect to

4.

peculiar risks was inapplicable. On the same facts, Wildwood asserted that no strict liability was available, as the activity involved was not ultrahazardous as a matter of law.

*Wildwood's Separate Statement*

Wildwood's separate statement of undisputed material facts (separate statement) in support of its motion for summary judgment, numbered as facts 1–23, included in substance the following assertions of fact along with supporting evidence:[3]

On November 13, 2015, an employee of BND was operating excavation equipment on agricultural land located on the northwest corner of Houghton and Wible Roads in Kern County, California, when he struck an underground high pressure, natural gas line (i.e., Pipeline 300A), causing a fire on adjacent property occupied by Gloria Ruckman, Robert Elias Ruckman (a minor), and Amalia Leal. The agricultural land on which the excavation work was being done was owned by defendant Wildwood. During the 2015–2016 farming season, Wildwood and Ag-Wise entered into a Farm Management Services Agreement (management agreement) whereby Ag-Wise agreed to provide farming and management services concerning Wildwood's farmland. Pursuant to the management agreement, Wildwood delegated to Ag-Wise all duties and responsibilities in managing the farming on the property, including " 'all acts and services … necessary or desirable for management of the operation in order that the farming on the PROPERTY be undertaken … in accordance with the best agricultural practices employed', and to '[e]nsure compliance with all known regulatory requirements imposed by federal, state, or local authorities.' " Pursuant to the management agreement, Ag-Wise was given "full authority to employ qualified and experienced workman in carrying out the terms of [the management agreement], and shall be responsible for and in full control of such workman so hired." Thus, pursuant to the management agreement,

---

[3]    For purposes of this synopsis, and for the sake of brevity, we refer to the asserted facts in the manner they were presented, but not to the supporting evidence.

Wildwood delegated full authority and responsibility to Ag-Wise with respect to hiring and controlling any and all independent contractors and/or subcontractors, including BND, for the purpose of providing farming and management services concerning the subject agricultural property.

Ag-Wise exclusively made the decision to hire BND to perform digging, excavating, and/or ripping services on the property. Before Ag-Wise hired BND, Ag-Wise did not seek nor did it have to seek Wildwood's permission to hire BND. At no time was Wildwood, or any representative thereof, involved in Ag-Wise's decision to hire BND for the purpose of performing and carrying out digging, excavating, and/or ripping activities on the property. Wildwood did not retain the right or power to hire, control, manage, or supervise Ag-Wise and its employees with respect to farming and management services performed on the property, or any of the independent contractors or subcontractors hired by Ag-Wise, including BND and its employees, with respect to management services performed on the property. Further, Wildwood did not manage, supervise, dictate, instruct, or control the digging, excavating, and/or ripping services engaged in and performed by BND and its employees on the property.

Under the management agreement, Wildwood delegated to Ag-Wise all responsibility for securing required licenses and permits necessary to the performance of services and the conduct of the operations envisioned under the management agreement. Ag-Wise, in hiring BND to engage in and perform digging, excavating, and/or ripping services, delegated to BND the responsibility for securing any licenses and permits necessary to perform digging, excavating, and/or ripping services, including obtaining "USA Tickets" prior to the commencement of any work on the property. When obtaining a USA Ticket, PG&E determines whether any gas lines are present in the area and marks the lines so that contact with the lines is avoided. At all times prior to the commencement of and during the performance of work on the property, BND, and BND's employees performing services on the property, were aware of the presence and

6.

general location of Pipeline 300A.  BND also held customary meetings to inform its employees of the existence of underground utilities present in the area where the work was to be performed.

Further, according to Wildwood's separate statement, it is standard practice for operators who are digging, excavating, and/or ripping in an area where a pipeline exists to not operate directly over the pipeline but to maintain a safe distance away from any pipeline.  BND's standard practice was to create a buffer zone surrounding any existing pipeline and intended to implement said buffer zone surrounding Pipeline 300A.  The risk of striking any underground pipeline as a result of digging, excavating, and/or ripping can be eliminated by adhering to the following safety procedures:  (i) obtaining USA tickets requesting that any underground pipelines be properly marked by PG&E; (ii) marking the areas where any underground pipelines exist with flags or markers; (iii) creating a buffer zone surrounding any underground pipelines; and (iv) adhering to the buffer zone when performing digging, excavating and/or ripping activities.  If the foregoing procedures are followed, activities involving digging, excavating, and/or ripping where an underground pipeline is present "are often performed successfully and safely."  Such digging, excavating and/or ripping activities where an underground pipeline is present "is a common practice" with respect to farming and property development in the Kern County area.

Plaintiffs' Opposition to the Motion for Summary Judgment

On September 10, 2018, plaintiffs filed opposition to the motion for summary judgment, arguing that Wildwood did not show entitlement to judgment as a matter of law and/or triable issues of fact existed because Wildwood's motion did not adequately negate plaintiffs' theories of nondelegable duty, peculiar risk and ultrahazardous activity.

*Plaintiffs' Separate Statement*

In opposing the motion, plaintiffs' separate statement asserted other material facts existed in addition to those presented by Wildwood, which were numbered in plaintiffs'

7.

separate statement as additional facts 1–50.  Some of the main factual assertions set forth therein were as follows:

In 2015, when Wildwood entered into its agreement with Ag-Wise, referred to previously herein as the management agreement, it was "for Ag-Wise to develop their land and plant almond trees at [the] Houghton and Wible Road property."  Wildwood, through its managing member John Bidart, knew that a gas line ran underneath its property before entering into the management agreement with Ag-Wise.  The management agreement, at article I, section D, stated that Wildwood agrees it has secured, or will secure, all required licenses and permits necessary to the performance of Ag-Wise's services.[4]  Wildwood did not ascertain the depth or precise location of the gas line before the excavation or "soil ripping" work started on its property, and it did not itself obtain any USA permit.  Wildwood also did not ensure that any special precautions were taken to avoid hitting the underground gas line during the excavation or soil ripping process.

When a development plan calls for planting trees, such as almond trees, Ag-Wise will select an excavation company to "deep rip the soil."  Ag-Wise selected BND to perform the deep soil ripping even though it knew that BND had a history of striking underground utility lines.  In one prior incident that occurred in October 2014, while BND was working on another job for Ag-Wise, BND struck the same pressurized gas line (i.e., Pipeline 300A) that was buried underneath the soil it was ripping.  Prior to the October 2014 incident, both Ag-Wise and BND knew a highly pressurized gas line was in that location.  Although the October 2014 incident did not result in a fire or explosion, it could have been life threatening.  The massive gas leak from the 2014 incident resulted in schools in the surrounding area being temporarily closed.  Before hiring Ag-Wise in

---

**4**    Conversely, the same provision also stated that Ag-Wise agrees and represents it will secure all required licenses and permits necessary to the performance of its services, and the conduct of the operations envisioned under the agreement.

8.

2015, Wildwood did not request references or inquire about its safety record for deep soil ripping projects; nor did Wildwood ask who would be performing the deep soil ripping on its property.

The high-pressure gas line was buried less than four feet below the surface. Wildwood understood the ripping/excavating depth would be between five and six feet. When BND conducted the work, it would sink a metal shank five to six feet down into the soil. In operating the excavation equipment, the method used by BND's workers was to drive the tractor in a direction perpendicular to (or towards) the high-pressure gas line, and upon reaching the buffer zone, to cross over it with the equipment lifted up, and then (once beyond the buffer zone) drop the shank back into the soil.[5] Wildwood's managing partner, John Bidart, would occasionally visit the property to check the progress of the excavation work. He never went over to the excavator/worker to warn him about the underground gas line.

On Friday, November 13, 2015, without a valid 811 permit, BND struck and punctured Pipeline 300A.[6] The puncture caused a massive gas explosion, with flames more than 200 feet in the air. Wildwood's managing partner, John Bidart, heard the explosion and could see the flames from six miles away. The explosion and fire burned down the Ruckman house, killed their pets, and caused third and fourth degree burns over Gloria Ruckman's and Amalia Leal's bodies.

Wildwood's Reply Papers in Support of Motion

On September 19, 2018, Wildwood filed its reply to plaintiffs' opposition to the motion for summary judgment. The reply included excerpts from the deposition of

---

[5] We have amplified or filled in some gaps in this statement of fact in plaintiffs' separate statement regarding the worker's methodology to correspond more fully and accurately to the supporting deposition testimony.

[6] A prior permit had been obtained by BND, but at the time of the incident, it had lapsed or expired.

PG&E's person most knowledgeable, Steve Cleaver, who inspected the property after the incident. Cleaver testified based on the existence and location of remaining flags (or wire remnants thereof) that the pipeline's location had been properly marked before the incident.

Hearing on Motion for Summary Judgment

Wildwood's motion for summary judgment was heard on September 24, 2018.[7] At the outset of the hearing, the trial court announced its tentative ruling was to grant the motion because "the *Privette* [*v. Superior Court* (1993) 5 Cal.4th 689] … line of cases prevents the [p]laintiffs from establishing the negligence claims against Wildwood" since there was no affirmative showing of "any affirmative exercise of control" over BND. As to strict liability, the trial court indicated it did not appear the activity constituted "ultrahazardous" work. For these reasons, the trial court's tentative ruling was to grant the motion. Plaintiffs' attorney responded that since this case involves injury to *bystanders*, not the contractor's employee, "the *Privette* shield does not apply." Plaintiffs' attorney then argued the applicability of nondelegable duty and peculiar risk, urging the trial court to find a triable issue of fact exists under those two theories. At the same hearing, Wildwood's attorney noted that grounds other than *Privette* existed for granting the motion; namely, that both Ag-Wise and BND "were fully aware of the pipeline" and therefore any duty to warn or to safely maintain the property was satisfied by Wildwood. Additionally, the task had been delegated by Wildwood to Ag-Wise, and Wildwood exercised no control over it. Further, Wildwood's attorney argued that there was no liability under the theories of peculiar risk or ultrahazardous activity.

On October 5, 2018, the trial court's written order granting Wildwood's motion for summary judgment was filed. As to the relevant facts that were shown by the moving

---

**7** Several other summary judgment and/or summary adjudication motions by other defendants or relating to other injured parties were heard in the case at the same hearing.

and opposing papers, the trial court's order held there were no triable issues of material fact as to Wildwood's facts numbers 1 through 23 and plaintiffs' additional facts numbers 1 through 50. The trial court concluded these undisputed facts establish the following: "1. Wildwood is not vicariously liable as a matter of law for the negligent acts or omissions of [Ag-Wise], [BND], and/or any other [d]efendant in the instant matter. [¶] 2. Plaintiffs' premises liability claim fails as a matter of law as the [u]ndisputed [m]aterial [f]acts demonstrate Wildwood did not breach any duty owed to [p]laintiffs. [¶] 3. Plaintiffs' strict liability claim fails as a matter of law as digging, excavating and/or ripping is not an ultra-hazardous activity because the risk of harm created by the activity is a risk that can be eliminated by the exercise of care." Accordingly, the trial court granted the motion for summary judgment in favor of Wildwood, and judgment was entered.

A motion for a new trial was filed by plaintiffs. That motion was denied by the trial court on December 20, 2018.

Plaintiffs' notice of appeal from the judgment timely followed.

## DISCUSSION

### I. Summary Judgment Standard of Review

A defendant may move for summary judgment if it is contended the action has no merit. (Code Civ. Proc., § 437c, subd. (a)(1).) Summary judgment is appropriate when all of the papers submitted show there is no triable issue of material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) On appeal, we review the correctness of the trial court's ruling de novo, applying the same legal standard as the trial court. (*Havstad v. Fidelity National Title Ins. Co.* (1997) 58 Cal.App.4th 654, 658.) That is, our task is to

11.

independently determine whether an issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1206; *Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601; see *Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 464 [on review of summary judgment order, "we examine the facts presented to the trial court and determine their effect as a matter of law"].)

Preliminarily, we note that plaintiffs contend the trial court erroneously relied on the holding in *Privette v. Superior Court*, *supra*, 5 Cal.4th 689, 702 (*Privette*), which holding would be applicable only in the context of a contractor's injured employee who had a worker's compensation remedy. Although the trial court did indicate at oral argument it was inclined to follow *Privette* and that case's progeny, the actual wording of the trial court's written order did not mention *Privette*. On balance, we think the record is uncertain or inconclusive on what the trial court's rationale was. In any event, even if the trial court's reasoning was erroneous to some extent, our task is to conduct a de novo review to determine the effect of the facts and issues presented in the trial court as a matter of law. "We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons." (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181.)

## II. Legal Background to Issues Raised

At common law, a landowner or other person who hired an independent contractor to perform a task generally was not liable to third parties for injuries caused by the independent contractor's negligence. (*Delgadillo v. Television Center, Inc.* (2018) 20 Cal.App.5th 1078, 1086; *Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1160.) Central to this general rule of nonliability was the recognition that a person who hired an independent contractor ordinarily had no right to control the mode of doing the work. (*SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 598.) Viewed under the concept of delegation, the common law rule recognized that when a hirer or landowner

delegated a task to an independent contractor, it in effect delegated responsibility for performing the task safely. (*Id*. at p. 600; *Kinsman v. Unocal Corp*. (2005) 37 Cal.4th 659, 671.) However, over time, the courts have for policy reasons created many *exceptions* to this general rule of nonliability, and it has been observed that the rule is now primarily important as a preamble to the catalog of its exceptions. (*Privette*, *supra*, 5 Cal.4th at p. 693.)

Two of the main exceptions to the general rule of nonliability of hirers of independent contractors are raised by plaintiffs in the instant appeal: peculiar risk and nondelegable duty. "A company that hires an independent contractor can be held liable to third parties under the doctrine of peculiar risk [citation], [and] the nondelegable duty exception [citation] …." (*Secci v. United Independent Taxi Drivers, Inc*. (2017) 8 Cal.App.5th 846, 860.) In challenging the trial court's order granting Wildwood's motion for summary judgment, plaintiffs argue there are triable issues of fact relating to whether Wildwood is potentially liable under theories of peculiar risk and nondelegable duty. Additionally, plaintiffs also argue triable issues of fact exist whether Wildwood was strictly liable for undertaking an "ultrahazardous" activity on its land. We shall address each of these theories of recovery and consider them in light of the factual showing made in the summary judgment motion, in our discussion that follows.

## III. Peculiar Risk Doctrine

A. <u>Overview of Peculiar Risk</u>

"The doctrine of peculiar risk is a judicially created exception to the common law rule that a person hiring an independent contractor to perform inherently dangerous work is generally not liable to third parties for injuries resulting from the work." (*Tverberg v. Fillner Construction, Inc*. (2010) 49 Cal.4th 518, 524.) A peculiar risk is "neither a risk that is abnormal to the type of work done, nor a risk that is abnormally great." (*Privette*, *supra*, 5 Cal.4th at p. 695.) Rather, it is a special and recognizable danger inherent in the work itself, arising either from the nature or the location of the work to be done, and

13.

against which a reasonable person would recognize the necessity of taking special precautions. (*Ibid*.; see also *Aceves v. Regal Pale Brewing Co*. (1979) 24 Cal.3d 502, 509 [it is a special risk " 'peculiar to the work to be done' " which " 'arises out of its character or the place where it is to be done,' " and that reasonably necessitates the taking of special precautions].) The peculiar risk doctrine is expressed by the Restatement Second of Torts, section 416, as follows: " 'One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.' " (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 306, quoting Rest.2d Torts, § 416; *Aceves v. Regal Pale Brewing Co*., *supra*, 24 Cal.3d at p. 509, referring to Rest.2d Torts, §§ 413, 416; see also CACI No. 3708.)[8] In its effect, the peculiar risk doctrine creates a form of *vicarious* liability on the part of the hirer of the independent contractor. (*Privette*, *supra*, 5 Cal.4th at p. 695 & fn. 2; *American States Ins. Co. v. Progressive Casualty Ins. Co*. (2009) 180 Cal.App.4th 18, 29–30.)

Through the peculiar risk doctrine, courts have sought to ensure that a landowner who chose to undertake inherently dangerous activity on his or her land would not escape liability for injuries to third parties—e.g., innocent bystanders or neighboring property owners—simply by hiring an independent contractor to do the work. (*Privette*, *supra*, 5 Cal.4th at pp. 694–696; *Tverberg v. Fillner Construction, Inc*., *supra*, 49 Cal.4th at pp. 524–525.) Thus, "innocent third parties injured by the negligence of an independent contractor hired by a landowner to do inherently dangerous work … would not have to

---

[8] California has followed the Restatement Second of Torts regarding peculiar risk. (See *Griesel v. Dart Industries, Inc*. (1979) 23 Cal.3d 578, 585; *Aceves v. Regal Pale Brewing Co.*, *supra*, 24 Cal.3d at p. 509.)

14.

depend on the contractor's solvency in order to receive compensation for the injuries." (*Privette*, *supra*, at p. 694.)

Illustrative examples of work that has been held to create a peculiar risk warranting special precautions were summarized by this court decades ago as follows: "The danger of being struck by a wall being knocked down on a demolition job (*Aceves v. Regal Pale Brewing Co.*, *supra*[, 24 Cal.3d 502]); the risk of a cave-in while working in a nine-foot deep unshored and unsloped trench (*Griesel v. Dart Industries, Inc.*[, *supra*,] 23 Cal.3d 578); … ; eradicating white line markings on the street with the risk a motorist would injure a workman (*Van Arsdale v. Hollinger* (1968) 68 Cal.2d 245); repairing a metal tank from the inside by forcing buckled metal outward with the risk that the metal would spring inward and injure a workman (*Ferrel v. Safway Steel Scaffolds* (1962) 57 Cal.2d 651); painting the inside of a tank with the risk of an explosion because of inadequate ventilation (*Woolen v. Aerojet General Corp.* (1962) 57 Cal.2d 407); …; cement work on a bridge 20 feet high with no scaffolding or railing—worker fell from bridge (*Fonseca v. County of Orange* (1972) 28 Cal.App.3d 361); erecting and cross-girdering of 30-foot steel column for a water tower without safety equipment to keep plaintiff from failing off tower (*Stilson v. Moulton-Niguel Water Dist.* (1971) 21 Cal.App.3d 928); building a bridge over high voltage wires—worker injured when boom of crane touched wire (*Walker v. Capistrano Saddle Club* (1970) 12 Cal.App.3d 894); building [a] concrete wall and floor without railings to a height of 10 feet with the risk that a workman might fall or be pushed from the wall (*Morehouse v. Taubman Co.* (1970) 5 Cal.App.3d 548); [and] backing a loaded truck on a construction project without a warning device with the risk that worker might be run down (*Anderson v. L.C. Smith Constr. Co.* (1969) 276 Cal.App.2d 436)." (*Stark v. Weeks Real Estate* (1979) 94 Cal.App.3d 965, 970–971.)[9]

---

[9]     Parallel citations of the quoted cases have been omitted.

15.

Even when work performed by an independent contractor poses a special or peculiar risk of harm, the person who hired the contractor will not be liable for injury to others if the injury results from the contractor's mere " 'collateral' " or " 'casual' " negligence. (*Privette*, *supra*, 5 Cal.4th at p. 696.) An independent contractor's negligence may be found to be collateral when it "involves an 'operative detail of the work, as distinguished from the general plan or method to be followed.' [Citation.]" (*Ibid.*; see Rest.2d Torts, § 426.) Thus, if the negligence bears no relation to the peculiar risk inherent in the character or location of the particular work, but simply arises out of the common or ordinary risks of performing operative details of the work, the doctrine does not apply. (See, e.g., *Bowman v. Wyatt*, *supra*, 186 Cal.App.4th 286, 309 [peculiar risk inapplicable where character of the work did not contribute to the accident, which was a result of ordinary use of vehicle]; *Hughes v. Atlantic Pacific Construction Co.* (1987) 194 Cal.App.3d 987, 1000 [doctrine inapplicable to negligent selection of pieces of plywood and its wedging support during construction]; *Stark v. Weeks Real Estate*, *supra*, 94 Cal.App.3d at pp. 972–973 [peculiar risk inapplicable to negligent use or misuse of the customary tools or equipment in performing the work].) However, as cautioned by *Privette*, "it is often difficult to distinguish those risks that are inherent in the work from those that are collateral, and the line to be drawn between the two types of risks is 'shadowy.' [Citation.]" (*Privette*, *supra*, 5 Cal.4th at p. 696.)

"The analysis of the applicability of the peculiar risk doctrine to a particular fact situation can be broken down into two elements: (1) whether the work is likely to create a peculiar risk of harm unless special precautions are taken; and (2) whether the employer should have recognized that the work was likely to create such a risk." (*Jimenez v. Pacific Western Construction Co.* (1986) 185 Cal.App.3d 102, 110.) These questions are ordinarily resolved by the trier of fact. (*Ibid.*; *Castro v. State of California* (1981) 114 Cal.App.3d 503, 511 [whether the work creates a peculiar risk "is ordinarily a question of fact"].) However, on a proper showing, a court may determine the applicability of

peculiar risk as a matter of law. (*Jimenez v. Pacific Western Construction Co.*, *supra*, 185 Cal.App.3d at p. 110; *Bowman v. Wyatt*, *supra*, 186 Cal.App.4th at p. 309.)

B.  Analysis of Arguments Raised on Appeal

The trial court's written order granting summary judgment held without any explanation that Wildwood is not vicariously liable for the negligent acts of Ag-Wise or BND as a matter of law. That holding necessarily disposed of the peculiar risk claim, which is a form of vicarious liability.

Plaintiffs argue the trial court reversibly erred. They emphasize the nature of the work was not merely digging, excavating or ripping agricultural land in preparation for planting trees, but doing so in proximity to an underground high-pressure gas line. Because of the location of the excavation work (i.e., near the gas line), there was allegedly a special risk inherent in the work (i.e., striking the gas line and causing explosion or fire), which reasonably necessitated special precautions. In this regard, plaintiffs point out Wildwood admitted, in its separate statement, that the risk of striking an underground pipeline as a result of digging, excavating or ripping can be eliminated by following certain procedures. These precautionary procedures consist of (i) obtaining USA tickets requesting that any underground utilities or pipelines be properly marked by PG&E, (ii) marking the area where any underground pipelines exist with flags or markers, (iii) creating a buffer zone surrounding any underground pipelines, and (iv) adhering to the buffer zone when performing the work. According to plaintiffs, this admission by Wildwood confirms that special precautions were needed to perform the work in a manner to avoid the peculiar risk of striking the pipeline. At the very least, plaintiffs argue, the question should be left to the jury to resolve.

In response, Wildwood makes reference to its evidentiary showing in support of the motion for summary judgment that digging, excavating or ripping farmland which has an underground pipeline is a "common practice" in Kern County, and industry protocols and requirements include the necessary precautions to avoid striking a pipeline.

17.

According to Wildwood, since avoidance of utility pipelines is often a part of any such excavation work, the work involved in this case should not be characterized as creating a special or peculiar risk.[10] (See *Aceves v. Regal Pale Brewing Co.*, *supra*, 24 Cal.3d at p. 509 [a peculiar risk "is something other than the ordinary and customary dangers which may arise in the course of the work or of normal human activity"].)

On the record in this case, we are unable to conclude that *as a matter of law* the undertaking did not involve a peculiar risk. To the extent the work contemplated by Wildwood was digging, excavating or ripping of agricultural land for the purpose of planting trees, but it was known that the same land was traversed by a high-pressure underground gas line—something inherently explosive if ruptured—a trier of fact could reasonably conclude under all the facts and circumstances that a special recognizable risk of harm was involved as a result of the location of the excavation work in the vicinity of the high-pressure pipeline, thereby necessitating that special precautions be taken. Therefore, on the showing made in connection with the motion, the question of whether a peculiar risk was present here remained a triable issue of fact. (*Castro v. State of California*, *supra*, 114 Cal.App.3d 503, 511 [whether the work creates a peculiar risk "is ordinarily a question of fact"].) That is, the trial court's ruling as to this legal theory cannot be affirmed on the ground no peculiar risk existed as a matter of law, since on the showing made that particular issue remained a factual question for the trier of fact.

---

**10** Wildwood also asserts, without citation to the record as evidentiary support and without adequate legal and factual analysis, that peculiar risk was inapplicable because there was no *recognizable* risk from Wildwood's vantage point of a major explosion and fire. That determination would require "consideration of the employer's [i.e., Wildwood's] knowledge and experience in the field of work to be done" (*Aceves v. Regal Pale Brewing Co.*, *supra*, 24 Cal.3d at p. 509), which is not before us. Moreover, the issue was not addressed in Wildwood's separate statement and is asserted on appeal as a mere conclusion. We disregard this argument as inadequately supported. (See *People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4 [an argument "raised in such perfunctory fashion is waived"].)

A second argument by Wildwood asserts that the peculiar risk doctrine was unavailable here due to collateral negligence. Specifically, Wildwood argues that peculiar risk was inapplicable because, even though special precautions *were* taken, BND's worker still hit the pipeline, which allegedly indicates the accident must have been caused by collateral negligence—that is, the result of an ordinary mistake by the worker in carrying out the operational details of the work, not an absence of special precautions.

Some further elaboration of this line of argument is required. Preliminarily, we agree it was shown that some forms of special precautions were taken by BND. In our independent review of all the papers and evidence in connection with the motion for summary judgment, it appears that a prima facie showing was made therein that special precautions or procedures were followed by BND in performing the work. This prima facie showing included evidence of the following: (1) That PG&E marked the location of the pipeline with flag markers; (2) BND marked out a buffer zone of about 15 feet on both sides of the pipeline; (3) BND's workers were informed of the existence and general location of the pipeline and markers; (4) The procedure adopted by BND was to have its excavation worker drive the tractor in a direction perpendicular to (or towards) the high-pressure gas line, and upon reaching the buffer zone, to cross over it with the equipment lifted up off the ground, and then (once beyond the buffer zone) drop the shank back into the soil.

According to Wildwood, the above factual showing established that BND's workers were advised of the location of the pipeline and understood that no excavation or ripping activity was to be conducted directly over the pipeline area. Further, according to Wildwood, and in light of the above showing, the fact that on the date of the accident one of BND's workers apparently *did* excavate over the pipeline and struck it gives rise to a reasonable inference that the worker simply made a mistake (e.g., was not paying attention) in carrying out the *operative details* of the work. The case authorities reflect

that the doctrine of peculiar risk does not apply to collateral or casual negligence in performing the operative details of the work, such as neglect or carelessness with respect to the use or operation of equipment. (See *Johnson v. Tosco Corp.* (1991) 1 Cal.App.4th 123, 132–134; *Stark v. Weeks Real Estate*, *supra*, 94 Cal.App.3d at pp. 971–973; see also *Hughes v. Atlantic Pacific Construction Co.*, *supra*, 194 Cal.App.3d at p. 1000 ["The possibility of routine negligence in the performance of work provides no basis for such liability."]; *Privette*, *supra*, 5 Cal.4th at p. 696.)

Although the above collateral negligence argument has some superficial appeal, we find it to be deficient in the context of Wildwood's summary judgment motion. In our assessment of this matter, we conclude that Wildwood's showing was too equivocal, fragmentary and incomplete on the question whether the accident was in fact *caused* by collateral negligence to adequately meet its initial burden on that issue. Among other deficiencies is the following: Because BND required its worker to drive the excavation equipment perpendicularly across or over the pipeline with each pass, it appears to this court that the issue of the conspicuous nature (or lack thereof) of the markers and buffer zone along the length of the pipeline across this farmland would be crucial to that question. However, Wildwood's separate statement did not provide any description or other indication of how clear, apparent or conspicuous the markers and buffer zones were. In addition to this shortcoming in the showing made by Wildwood, we note the literal wording of Wildwood's separate statement is incomplete, doubtful or equivocal in its portrayal of the extent of the precautions taken by BND, stating among other things that BND's employees were only made aware of the "*general* location" of the pipeline, and that BND "*intended* to implement" a buffer zone surrounding the pipeline. Also, remarkably absent from the separate statement on this point is any statement asserting the cause of the accident. We conclude the showing by Wildwood was insufficient to shift the burden as the moving party on this issue, and a triable issue of fact remained whether the accident was caused by collateral negligence. "In performing our de novo review,

20.

'we must view the evidence in a light favorable to plaintiff as the losing party [citation], … resolving any evidentiary doubts or ambiguities in plaintiff's favor.' " (*Leyva v. Garcia* (2018) 20 Cal.App.5th 1095, 1103.)

Based on the forgoing discussion, inasmuch as triable issues of fact existed regarding factual elements bearing upon the applicability of the peculiar risk theory of vicarious liability, we conclude the trial court erred in granting the motion with respect to that distinct claim.

## IV. Nondelegable Duty

In a further effort to obtain vicarious liability against Wildwood, plaintiffs also alleged that Wildwood is liable under the theory of nondelegable duty relating to Wildwood's responsibility to maintain the property. The trial court implicitly rejected this theory in its order granting summary judgment when it held that Wildwood was not subject to vicarious liability for the negligence of Ag-Wise or BND. Plaintiffs challenge the trial court's ruling, arguing triable issues of fact existed as to whether Wildwood breached nondelegable duties owed to plaintiffs relating to Wildwood's maintenance of its farmland. As explained below, we disagree with plaintiffs and conclude the trial court's ruling was correct on this matter.

A. This Case Did Not Involve the Specified Nondelegable Duty

"The nondelegable duties doctrine prevents a party that owes a duty to others from evading responsibility by claiming to have delegated that duty to an independent contractor hired to do the necessary work. The doctrine applies when the duty preexists and does not arise from the contract with the independent contractor." (*SeaBright Ins. Co. v. US Airways, Inc.*, *supra*, 52 Cal.4th 590, 600–601.) Thus, the existence of a nondelegable duty constitutes one of the exceptions to the general rule of nonliability of one who hires an independent contractor for the performance of the work. (*Koepnick v. Kashiwa Fudosan America, Inc*. (2009) 173 Cal.App.4th 32, 36.) A typical example is that car owners cannot delegate their duty to ensure that their cars have working brakes,

21.

even if the mechanic failed to discover the brake problem.  (*Maloney v. Rath* (1968) 69 Cal.2d 442, 446–447.)

The nondelegable duty asserted by plaintiffs in this case is the duty incumbent upon owners or possessors of real property to maintain the property in a reasonably safe condition.  As stated in *Brown v. George Pepperdine Foundation* (1943) 23 Cal.2d 256 (*Brown*):  " 'The duty which a possessor of land owes to others to put and maintain it in reasonably safe condition is nondelegable.  If an independent contractor, no matter how carefully selected, is employed to perform it, the possessor is answerable for harm caused by the negligent failure of his contractor to put or maintain the buildings and structures in reasonably safe condition ….' "  (*Id*. at p. 260.)  Thus, a landlord cannot escape liability for failure to maintain elevators in a safe condition by delegating such duty to an independent contractor.  (*Id*. at p. 259 [where child injured after falling down elevator shaft due to independent contractor's negligent maintenance, landlord found liable under nondelegable duty rule]; *Koepnick v. Kashiwa Fudosan America, Inc*., *supra*, 173 Cal.App.4th at p. 36 [applying *Brown* where injury occurred due to malfunctioning elevator].)  The nondelegable duty rule has been applied to other instances of unsafe conditions of real property.  (See, e.g., *Srithong v. Total Investment Co*. (1994) 23 Cal.App.4th 721, 726 [unsafe condition of roofing]; *O'Gan v. King City Joint Union High School Dist*. (1970) 3 Cal.App.3d 641, 646 [unsafe sink dislodged and caused injury]; *Knell v. Morris* (1952) 39 Cal.2d 450, 456–457 [unsafe condition of water heater]; see also *Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1156 [hazardous condition of meter box on ground missing its cover].)  In this regard, a landowner's duty of care may extend to persons outside the property if the landowner's property is maintained in such an unsafe manner as to expose persons offsite to an unreasonable risk of injury.  (*Kesner v. Superior* Court, *supra*, 1 Cal.5th 1132, 1159–1160 [e.g., escaped animals or escaping substances that cause injury].)  When the nondelegable duty rule is applied, it creates a

22.

form of *vicarious* liability against the owner or possessor of the real property. (*Srithong v. Total Investment Co.*, *supra*, 23 Cal.App.4th 721, 727.)

Wildwood argues the nondelegable duty rule, as outlined above, does not apply to this case because the *substance* of plaintiffs' claim does not involve harm caused by an unsafe condition of the real property in violation of Wildwood's responsibility to maintain it, but rather it involves harm caused by the action of a contractor that negligently severed a gas line it was aware of. On the factual record before us, we are persuaded that Wildwood's distinction is fundamentally correct and it reflects the nondelegable duty rule under consideration does not apply here. Manifestly, this case is about the peculiar risks inherent in performing relatively deep excavation work on Wildwood's land in light of the existence of an underground high-pressure gas line; and conversely, it is not about the condition of that land apart from that particular excavation work. No preexisting duty is involved, but only that which may be related to the peculiar nature of the work being performed under scope of the independent contractor. Therefore, as a matter of law, the cause of action is more accurately and properly one for peculiar risk—*not* a nondelegable duty arising out of Wildwood's maintenance responsibility.

For these reasons, we conclude that no reversible error has been shown by plaintiffs regarding the trial court's implicit rejection of the theory of a nondelegable duty to safely maintain the property as a potential basis for vicarious liability. The trial court correctly eliminated that distinct claim.

B. Wildwood's Duty Analysis Unavailing

Wildwood further argues under the factors set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 (*Rowland*) it had no nondelegable duty as the landowner relating to the maintenance of its property that would extend *to plaintiffs*—who were situated on neighboring property. Although not entirely clear, it appears Wildwood is seeking to preclude any liability as landowner in this case through an analysis of whether

23.

a duty of care existed based on factors such as the alleged lack of foreseeability and lack of proximity of the activity to plaintiffs. We need not give attention to this line of argument by Wildwood because it does not appear to this court that the issue of the foreseeability of the type or extent of harm (see *Kesner v. Superior Court*, *supra*, 1 Cal.5th at p. 1145) was adequately addressed in the facts presented in Wildwood's separate statement in connection with the summary judgment motion. Inasmuch as the issue was not adequately developed below, we are in no position to consider it on appeal.

To summarize this part of our opinion, plaintiffs have failed to demonstrate any error in the trial court's determination that Wildwood was not vicariously liable on a theory of nondelegable duty to maintain the land in a safe condition. Meanwhile, Wildwood's *Rowland* duty analysis was not adequately supported by the showing made in connection with the summary judgment motion, and, thus, was unavailing.

## V. Ultrahazardous Activity

The trial court held, in granting summary judgment, that plaintiffs' strict liability claim based on ultrahazardous activity "fails as a matter of law as digging, excavating and/or ripping is not an ultra-hazardous activity because the risk of harm created by the activity is a risk that can be eliminated by the exercise of care." Plaintiffs contend the trial court reversibly erred, because allegedly there were triable issues of fact relating to factors bearing on the question of whether the activity was ultrahazardous. We disagree. As explained below, the trial court correctly concluded that the activity in the present case was not ultrahazardous.

Under California law, " '[a]n activity is ultrahazardous if it (a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and (b) is not a matter of common usage….' " (*Luthringer v. Moore* (1948) 31 Cal.2d 489, 498.) The issue of whether an activity is ultrahazardous is one of law for the court to decide. (*Edwards v. Post Transportation Co*. (1991) 228 Cal.App.3d 980, 983.) In deciding on the question

24.

whether an activity is ultrahazardous or abnormally dangerous, the following factors are generally considered: " '[1] existence of a high degree of risk of some harm to the person, land or chattels of others; [2] likelihood that the harm that results from it will be great; [3] inability to eliminate the risk by the exercise of reasonable care; [4] extent to which the activity is not a matter of common usage; [5] inappropriateness of the activity to the place where it is carried on; and [6] extent to which its value to the community is outweighed by its dangerous attributes.' " (*Id*. at p. 985, quoting Rest.2d Torts, § 520.) It is not necessary that all the factors are present in a particular case. (*Ahrens v. Superior Court* (1988) 197 Cal.App.3d 1134, 1143.)

Here, the undisputed facts in support of the motion showed that the activity in question is not ultrahazardous. Most importantly, it was shown that ripping or excavation of farmland in preparation for planting trees can safely be carried out even where there is an underground gas pipeline crossing the land, if certain precautionary procedures are followed, including: "obtaining USA tickets requesting any underground utilities or pipelines be properly marked by [PG&E]; marking the area where any underground pipelines exist with flags or markers; creating a buffer zone surrounding any underground pipelines; and adhering to the buffer zone when performing digging, excavating and/or ripping activities." Where the risk can be effectively eliminated by the exercise of due care, as here, the court can properly determine it is not ultrahazardous. (*Edwards v. Post Transportation Co*., *supra*, 228 Cal.App.3d at p. 987 [finding no ultrahazardous activity present if risk can be eliminated through reasonable care since "[t]he theory of imposition of strict liability for ultrahazardous activity is that the danger *cannot* be eliminated through the use of care"]; accord, *Ramsey v. Marutamaya Ogatsu Fireworks Co*. (1977) 72 Cal.App.3d 516, 527–528, fn. 2.) Additionally, it was shown here that "[d]igging, excavating and/or ripping activities where an underground pipeline is present is a common practice with respect to farming and property development in the Kern County

25.

area." Finally, it is clear that the agricultural work was appropriate for the area in question (i.e., farmland) and is beneficial to the community.

We conclude the trial court did not err in determining, based upon the undisputed facts presented in connection with the summary judgment motion, that the present case did not give rise to strict liability under a theory of ultrahazardous activity.

## DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court. On remand, the trial court shall enter a new order denying Wildwood's motion for summary judgment but granting summary adjudication of all causes of action other than peculiar risk. Plaintiffs' case against Wildwood may then proceed on a peculiar risk theory. Costs on appeal are awarded to plaintiffs.

LEVY, Acting P.J.

WE CONCUR:


FRANSON, J.


PEÑA, J.

26.